## DANIEL T. CONNOLLEY, petitioner.

Suffolk. January 26, 1897. — March 29, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Quieting Title — Quitclaim Deed — "Record Title" — Statute.*

A quitclaim deed, duly recorded, of land acquired in part by disseisin, which the grantor has a good right to convey, gives to the grantee a "record title" to the whole estate, within the meaning of St. 1893, c. 340, § 1, relating to quieting titles to real estate.

PETITION, under St. 1893, c. 340, filed October 23, 1895, to quiet the petitioner's title to certain real estate in Boston. Hearing in this court, before *Allen,* J., who reported the case for the consideration of the full court, in substance as follows.

Sarah Davis, whose will was duly proved and allowed on or about May 15, 1847, died seised of one undivided half interest in the premises in question. In 1836, when she made the will, she had been seised of one undivided third part thereof only. By her will she devised one third part of the premises to her only sister, Susannah Davis, for life, with remainder to her two nephews, Charles and Horatio Davis, sons of her only brother, Charles Davis, who deceased in 1845. Sarah Davis died intestate as to the remaining one sixth interest in the premises, which descended to her sister Susannah and to the eleven children of her brother Charles. Susannah Davis died testate in 1851, seised of her original one half, together with the one twelfth which descended to her by reason of Sarah's partial intestacy,

making seven twelfths in all, and from her Charles and Horatio each derived title to seven twenty-fourths. Charles and Horatio, as two of the eleven children and heirs of their father, each, by reason of Sarah's partial intestacy, derived title by descent from her to $\frac{1}{132}$.

This left the title, in 1851, after Susannah's death, as follows. Charles and Horatio each had $\frac{123}{264}$ in all. Their nine sisters had by descent the remaining $\frac{9}{132}$, or $\frac{18}{264}$. Then Horatio, assuming to have one half, made a deed of warranty thereof in the usual form to Charles in 1851, which deed was duly recorded. This gave to Charles in reality $\frac{246}{264}$, but ostensibly $\frac{255}{264}$.

Charles died testate in 1888, and devised his estate in the premises, such as it was, to his five children, who were Charles Davis, Jr., James V. Davis, Cornelius Fellows Davis, Garafelia D. Chase, and Mary S. Hutchins. Cornelius Fellows Davis thereafter, on November 28, 1888, released all his interest in the premises to his four sisters and brothers, by a quitclaim deed in the usual form.

On December 15, 1894, Charles Davis, Jr., James V. Davis, Garafelia D. Chase, and Mary S. Hutchins released the premises to the petitioner by a quitclaim deed in similar form.

The petitioner showed that actual, open, and continuous adverse possession of the premises by Charles Davis and his children was had against all their tenants in common for forty-three years, from 1851 to 1894, when the premises were conveyed to the petitioner, and presented releases from most of the possible claimants under the nine sisters of Charles and Horatio Davis, to whom the outstanding $\frac{18}{264}$ descended by reason of Sarah's partial intestacy.

The judge ruled that, after the warranty deed from Horatio to Charles in 1851, the title of $\frac{18}{264}$ in fact remained in other heirs of Sarah than Charles; that Horatio's deed of warranty to Charles of one half, accepted and acted upon, gave to Charles a record title to one half in addition to the $\frac{123}{264}$ which he already owned, or $\frac{255}{264}$ in all; that since the deed from Horatio to Charles in 1851, no devise or deed assumes to give any greater interest than Charles had, and that the petitioner's title (apart from adverse possession or estoppel, or such facts outside of the records) is to only $\frac{246}{264}$; but that within the meaning of St.

1893, c. 340, he had a record title to $\frac{255}{264}$; and that, as to $\frac{9}{264}$, the petitioner had no record title whatever, and did not come within the statute.

*H. M. Williams*, for the petitioner.

KNOWLTON, J. This case is reported for our consideration by a justice of this court, and the only question in it is whether the petitioner has a record title to the whole estate within the meaning of St. 1893, c. 340, § 1.

It is found that, by the true construction of the will of Sarah Davis who died in 1847, the shares which Charles Davis and Horatio Davis took under it in the real estate in question were such as to make their interest in 1851, including portions which they inherited from others, $\frac{123}{264}$ each. In that year Horatio Davis made to his brother Charles a warranty deed of one half of the premises, which was duly recorded. That made Charles the real owner of $\frac{246}{264}$, and by deed and inheritance the ostensible owner of $\frac{255}{264}$. From that time until his death in 1888, a period of thirty-seven years, Charles Davis was in actual, open, and continuous adverse possession of the share of the premises belonging to his co-tenants, and he acquired an impregnable title by disseisin. This title passed by devise to his children. One of these children made a quitclaim deed of his share to the others, and on December 15, 1894, they united in a quitclaim deed to the petitioner. Both of these deeds were duly recorded. The grantors in these deeds had in fact a good right to convey, and the question is whether the quitclaim deed gave the petitioner a record title to the whole estate.

In *Pray* v. *Pierce*, 7 Mass. 381, and in *Russell* v. *Coffin*, 8 Pick. 143, it was held that a deed of release given for a valuable consideration will operate as a bargain and sale, or other lawful conveyance, by which an estate might pass. The principle of these decisions was afterwards embodied in our statutes, (Rev. Sts. c. 59, § 5, and Gen. Sts. c. 89, § 8,) and now appears in the Pub. Sts. c. 120, § 2, in these words: "A deed of quitclaim and release shall be sufficient to convey all the estate which could lawfully be conveyed by a deed of bargain and sale." Under this statute, upon the facts found, the petitioner acquired a fee simple by the deed in question. In *Woodward* v. *Sartwell*, 129 Mass. 210, it was held that a quitclaim deed describing land by

metes and bounds was good as against prior unrecorded encumbrances created by the grantor. The rule stated in *Adams* v. *Cuddy*, 13 Pick. 460, was also explained and limited. In *Nealon* v. *Henry*, 131 Mass. 153, 156, it was decided that a tender of a deed required by law may be made by a quitclaim deed, because " a deed of quitclaim or release conveys the estate of the grantor as effectually as a deed of warranty." In *Mansfield* v. *Dyer*, 131 Mass. 200, it was held that property fraudulently conveyed can be held against the creditors of the grantor by an innocent purchaser under a quitclaim deed from the fraudulent grantee.

The case at bar is clearly distinguishable from *Arnold* v. *Reed*, 162 Mass. 438. In that case, the grantor in the deed purported to be selling the property of another. It was decided that, to make a record title within the meaning of the statute, the record should show an apparent authority in the attorney or agent otherwise than by a mere recital by the grantor in the deed, and it was intimated that this rule would not apply to a deed in which one purports to sell his own land.

We are of opinion that the petitioner shows a record title to the whole property.          *Decree for the petitioner.*