### Francis J. Bevilacqua, Third *vs.* Pablo Rodriguez.

Suffolk. May 2, 2011. - October 18, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, & Duffly, JJ.

*Jurisdiction,* Land Court. *Land Court,* Jurisdiction. *Practice, Civil,* Parties, Standing, Dismissal. *Real Property,* Ownership, Record title, Mortgage, Bona fide purchaser. *Mortgage,* Real estate, Foreclosure, Assignment, Equity of redemption.

Discussion of the history and purposes of G. L. c. 140, §§ 1-5, the statutory scheme governing actions to try title, and of the jurisdictional facts that must be shown to establish standing to bring an action of this type. [766-770]
A plaintiff did not have standing to maintain an action to try title under G. L. c. 140, §§ 1-5, where, although the plaintiff was in physical possession of the real property in question, the plaintiff could not establish that he had "record title" as required by G. L. c. 240, § 1, given that record title could not be established by a single recorded quitclaim deed purporting to transfer title from the grantor bank to the plaintiff [770-771]; by the chain of title, which rested on a foreclosure sale conducted by the grantor bank, which was not the assignee of the mortgage at the time of the purported foreclosure [771-773]; by a theory that the plaintiff was an assignee of the mortgage, which would be inconsistent with maintenance of the action [773-776]; or by a theory that the plaintiff was a bona fide purchaser for value and without notice of the defects in the grantor bank's title, in light of evidence that the plaintiff must have attempted to purchase the property from the bank when registry records showed that the bank was a complete stranger to title, that the bank was no more than an assignee of a mortgage, or that the bank conducted the foreclosure sale before receiving assignment of the mortgage [776-779].
A Land Court judge erred in dismissing with prejudice an action to try title in which the plaintiff lacked standing. [779-780]

Civil action commenced in the Land Court Department on April 12, 2010.

The case was heard by *Keith C. Long,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Jeffrey B. Loeb (David Glod* with him) for the plaintiff.

*Richard A. Oetheimer (Natalie F. Langlois* with him) for Mortgage Bankers Association.

*Max Weinstein* (*Paul R. Collier, III*, with him) for Wilmer-Hale Legal Services Center of Harvard Law School.

*John M. Stephan & Amber Anderson Villa*, Assistant Attorneys General, for the Commonwealth.

The following submitted briefs for amici curiae:

*Mark B. Johnson* for American Land Title Association.

*Adam J. Levitin*, of the District of Columbia, *Christopher L. Peterson*, of Utah, *John A.E. Pottow*, of Michigan, & *Katherine Porter*, pro se.

*Edward Rainen, Carrie B. Rainen, & Ward P. Graham* for Massachusetts Association of Bank Counsel, Inc.

SPINA, J. In this case we must determine whether a plaintiff has standing to maintain a try title action under G. L. c. 240, §§ 1-5, where he is in physical possession of real property but his chain of title rests on a foreclosure sale conducted by someone other than "the mortgagee or his executors, administrators, successors or assigns." G. L. c. 183, § 21 (statutory power of sale). See G. L. c. 244, § 14 (procedure for foreclosure under power of sale). On his own motion, a Land Court judge determined that the plaintiff, Francis J. Bevilacqua, III, "holds no title to the property at 126-128 Summer Street in Haverhill" and thus lacks standing to bring a try title action. The judge dismissed the complaint with prejudice and Bevilacqua appealed. We granted Bevilacqua's application for direct appellate review and now affirm the dismissal of his complaint but conclude that such dismissal should have been entered without prejudice.[1]

1. *Procedural background.* This case comes before us on a highly unusual procedural footing. The respondent, Pablo Rodriguez, has not been located and accordingly has not entered an appearance. As a result, it fell to the Land Court judge to raise the issue of Bevilacqua's standing under G. L. c. 240, § 1. See Mass. R. Civ. P. 12 (h) (3), 365 Mass. 754 (1974) ("Whenever it appears by suggestion of a party or otherwise that the court

---

[1] We gratefully acknowledge the amicus briefs submitted by the American Land Title Association; the Attorney General of the Commonwealth; the Massachusetts Association of Bank Counsel, Inc.; the Mortgage Bankers Association; Professors Adam J. Levitin, Christopher L. Peterson, Katherine Porter, and John A.E. Pottow; and the WilmerHale Legal Services Center of Harvard Law School.

lacks jurisdiction of the subject matter, the court shall dismiss the action"); *Maxwell* v. *AIG Domestic Claims, Inc., ante* 91, 99-100 (2011); *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court,* 448 Mass. 15, 21 (2006); *Litton Business Sys., Inc.* v. *Commissioner of Revenue,* 383 Mass. 619, 622 (1981). The procedures applicable to such a sua sponte motion in a try title action are unclear, and the judge did not specify the rule under which the dismissal was ordered. We have received no briefing on the issue from Bevilacqua, and those amici addressing the point note that the absence of precedent leads them to "presume[]" the applicable standard.

In considering the appropriate procedure, we note that a court's sua sponte motion to dismiss for lack of subject matter jurisdiction is analogous to a party's motion to dismiss under either Mass. R. Civ. P. 12 (b) (1) or (6), 365 Mass. 754 (1974). Ordinarily, "[i]n reviewing a dismissal under rule 12 (b) (1) or (6), we accept the factual allegations in the plaintiffs' complaint, as well as any favorable inferences reasonably drawn from them, as true." *Ginther* v. *Commissioner of Ins.,* 427 Mass. 319, 322 (1998). Cf. *Iannacchino* v. *Ford Motor Co.,* 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 557 (2007) (clarifying standards for dismissal under rule 12 [b] [6]). The unusual mechanics of G. L. c. 240, §§ 1-5, however, suggest that the analogy may not be perfect and that a different standard may be appropriate.[2] We need not resolve the issue today, however, because we conclude that Bevilacqua's complaint

---

[2]It may not be desirable merely to assume the accuracy of a plaintiff's factual assertions. If a plaintiff brings a try title action and the respondent defaults, "the court shall enter a decree that [the respondent] be forever barred from having or enforcing any such claim adversely to the petitioner." G. L. c. 240, § 2. As a result, a property owner whose whereabouts are unknown and who is not reached through publication notice might be divested by a plaintiff who is put to no greater evidentiary test than having pleaded facts that the court is obliged to accept as true. See *Ginther* v. *Commissioner of Ins.,* 427 Mass. 319, 322 (1998). But see G. L. c. 240, § 4 (remedies for those dispossessed by default judgment). Here, for instance, there are no recorded instruments in evidence and Bevilacqua merely has alleged their existence and contents.

A better approach, consistent with the procedure followed in the case of a motion to dismiss due to lack of subject matter jurisdiction, may be to place the burden of proof on the nonmoving party (here, Bevilacqua) to prove jurisdictional facts. See, e.g., *Caffyn* v. *Caffyn,* 441 Mass. 487, 491 (2004). As

must be dismissed even if we apply the most favorable of the possible standards of review. See *Ginther* v. *Commissioner of Ins., supra* (standards for motion to dismiss for lack of subject matter jurisdiction). We thus "accept the factual allegations in [Bevilacqua's petition], as well as any favorable inferences reasonably drawn from them, as true." *Id.* Those facts are as follows.

On March 18, 2005, Pablo Rodriguez granted a mortgage on the property to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Finance America, LLC. The mortgage was recorded at the Southern Essex registry of deeds (registry). As of June 29, 2006, MERS had not assigned the mortgage to U.S. Bank National Association (U.S. Bank), but on that date, U.S. Bank executed a foreclosure deed referencing the mortgage and purporting to transfer the property pursuant to a foreclosure sale from U.S. Bank (as trustee under a trust that is not further described) to U.S. Bank "as Trustee under the securitization Servicing Agreement dated as of July 1, 2005 Structured Asset Securities Corporation Structure Asset Investment Loan Trust Mortgage Pass Through Certificates, Series 2005-HEI." Nearly one month later, on July 21, 2006, MERS assigned the mortgage to U.S. Bank in an assignment of mortgage recorded at the registry. A "confirmatory foreclosure deed" was then granted on October 9, 2006, by U.S. Bank to U.S. Bank as trustee under the servicing agreement. Eight days later, on October 17, 2006, U.S. Bank "as Trustee" granted a quitclaim deed to Bevilacqua.

On April 12, 2010, Bevilacqua filed a petition to compel Rodriguez to try title to the property. In his complaint, Bevilacqua claimed to reside at the property and to hold record title. Because of the fact that MERS had not assigned the mortgage to U.S. Bank at the time of the foreclosure, Bevilacqua alleged that

---

discussed further, *infra* at 767, the existence of record title is a requirement for standing under G. L. c. 240, § 1, and thus a jurisdictional fact. That said, application of a preponderance of the evidence standard may be inappropriate at this stage of a try title proceeding if it is indistinguishable from "the question whether [the plaintiff] has a better title [than the respondent]" — a matter that "is not to be determined in these proceedings, but in the actions which the respondents may be ordered to bring" as a result of the try title action. *Blanchard* v. *Lowell,* 177 Mass. 501, 504-505 (1901). Given these difficulties, it may be necessary to adopt a unique standard of review in future try title actions.

there is a cloud on his title in the form of "the possibility of an adverse claim by Rodriguez against Bevilacqua's title to the [p]roperty."

2. *Statutory background.* Bevilacqua seeks an order that either compels Rodriguez to bring an action to try his title or forever bars him from enforcing his adverse claims to the property. Try title actions under G. L. c. 240, §§ 1-5, are within the exclusive original jurisdiction of the Land Court. G. L. c. 185, § 1 (*d*). If Bevilacqua cannot satisfy the jurisdictional requirements of the statute, then the Land Court is without subject matter jurisdiction and the petition must be dismissed. See *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977); *Riverbank Improvement Co.* v. *Chapman*, 224 Mass. 424, 425 (1916) ("The Land Court is a statutory court, not of general but of strictly limited jurisdiction").

The statute states, in relevant part:

> "If the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land claiming an estate of freehold therein . . . may file a petition in the land court stating his interest, describing the land, the claims and the possible adverse claimants so far as known to him, and praying that such claimants may be summoned to show cause why they should not bring an action to try such claim."

G. L. c. 240, § 1. There are thus two steps to a try title action: the first, which requires the plaintiff to establish jurisdictional facts such that the adverse claimant might be "summoned to show cause why [he] should not bring an action to try [his] claim," and the second, which requires the adverse claimant either to disclaim the relevant interest in the property or to bring an action to assert the claim in question.[3] *Id.* See *Blanchard* v. *Lowell*, 177 Mass. 501, 504-505 (1901). The establish-

---

[3] As discussed further, *infra*, the structure of the try title statute is a direct reflection of the limitations inherent in the common-law writ of entry. The try title statute may now be something of an anachronism when it is considered that modern statutes are far more flexible than the common-law writ, see G. L. c. 237; that Massachusetts courts are now vested with equity jurisdiction, see, e.g., G. L. c. 185, § 1 (*k*); and that declaratory judgment is now available to litigants in this Commonwealth, see G. L. c. 231A, inserted by St. 1945, c. 582, § 1.

ment of jurisdictional facts, although essential in all cases, is thus a matter of particular salience in the initial stage of a try title action.

There appear to be two jurisdictional facts that must be shown to establish standing under G. L. c. 240, § 1. First, it is clear on the face of the statute that only "a person in possession" of the disputed property may maintain a try title action. *Id.* Second, although less obviously clear, a plaintiff must hold a "record title" to the land in question. *Blanchard* v. *Lowell, supra* at 504. *Arnold* v. *Reed,* 162 Mass. 438, 440-441 (1894). Here, Bevilacqua has alleged that he resides on the property, a factual assertion that we accept as true and from which we draw the favorable inference that he is "a person in possession" as required by G. L. c. 240, § 1.[4] Bevilacqua also claims to hold record title to the property as required to support standing. See *Blanchard* v. *Lowell, supra.* In dismissing the petition, the judge concluded that the facts alleged by Bevilacqua did not support his claim of record title and that, as a result, Bevilacqua lacked standing. This is the controversy presented on appeal.

Before analyzing whether Bevilacqua has demonstrated the existence of record title, and in light of the fact that it has been more than a century since this court last examined standing under G. L. c. 240, §§ 1-5, we first consider the history and purposes of the statute.[5] The initial try title statute was enacted in 1851 and provided:

"Any person in possession of real property, claiming an

---

[4]One of the amici has appended to its brief a number of deeds referring to the property at 126-128 Summer Street in Haverhill that were recorded between the time Bevilacqua purchased the property and the date on which he filed his petition. Specifically, Bevilacqua recorded a master deed establishing a condominium that consists of four units. Bevilacqua also recorded three deeds transferring units to various third-party purchasers. These deeds and the conveyances they represent are not matters properly before the court and do not factor into our analysis. Although nonevidentiary, the deeds are nevertheless noteworthy in that they explain why Bevilacqua's complaint is drafted to imply possession rather than pleading the matter directly, see *Connolley, petitioner,* 168 Mass. 201, 203 (1897) ("the only question . . . is whether the petitioner has a record title to the whole estate"), and in that they highlight the concerns addressed, see note 2, *supra,* regarding the proper standards of review and evidentiary burdens in a try title action.

[5]In determining that a plaintiff under G. L. c. 240, §§ 1-5, must possess

estate of freehold . . . may file a petition in the supreme judicial court, setting forth his estate . . . and averring that he is credibly informed and believes, that the respondent makes some claim adverse to the estate of the petitioner, and praying that he may be summoned to show cause, why he should not bring an action to try the alleged title, if any."

St. 1851, c. 233, § 66. Prior to enactment of this statute, the principal means of trying title to land was the writ of entry, which permitted a plaintiff to "obtain possession of real estate from a disseisor who is in possession and holds the demandant out." *Mead* v. *Cutler*, 208 Mass. 391, 392 (1911). See Black's Law Dictionary 472 (6th ed. 1990) (disseisor is "[o]ne who

both record title and possession, the motion judge quoted *Daley* v. *Daley*, 300 Mass. 17, 21 (1938), to the effect that "[a] petition to remove a cloud from the title to land affected cannot be maintained unless both actual possession and the legal title are united in the petitioner." The *Daley* case is inapposite, however, because it involves a bill to quiet title pursuant to G. L. c. 240, §§ 6-10, rather than an action to try title pursuant to G. L. c. 240, §§ 1-5. See generally R.W. Bishop, Prima Facie Case § 48.5, at 601-602 (5th ed. 2005) (intermingling discussion of both try title and quiet title cases in section entitled "Actions to Try Title").

An action to quiet title is an in rem action, G. L. c. 240, § 10, brought under the court's equity jurisdiction. See G. L. c. 185, § 1 (k); *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 209 (1906) ("in equity the general doctrine is well settled, that a bill to remove a cloud from the land . . . [requires that] both actual possession and the legal title are united in the plaintiff"). In contrast, an action to try title is an action at law brought against the respondent as an individual. See G. L. c. 240, § 2 ("the court shall enter a decree that [specified adverse claimants] be forever barred from having or enforcing any such claim adversely to the petitioner"); *Clouston* v. *Shearer*, 99 Mass. 209, 211, 212-213 (1868) (at time try title statute was enacted in 1851, Massachusetts courts did not yet possess general equity jurisdiction that would permit actions to remove cloud from title [not until 1852]).

The distinction is critical because the plaintiff in a try title action may defeat the specified adverse claims through a default or by showing title that is merely superior to that of the respondent. See G. L. c. 240, §§ 2-3; *Blanchard* v. *Lowell*, 177 Mass. 501, 504-505 (1901). In contrast, a quiet title action requires the plaintiff "not merely to demonstrate better title to the locus than the defendants possess, but requires the plaintiff to prove sufficient title to succeed in its action." *Sheriff's Meadow Found., Inc.* v. *Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 269 (1987). See *U.S. Bank Nat'l Ass'n* v. *Ibanez*, 458 Mass. 637, 645 (2011); *Loring* v. *Hildreth*, 170 Mass. 328 (1898). Precedent applicable to one statute, although potentially persuasive, does not control cases brought under the other statute.

puts another out of the possession of his lands wrongfully. A settled trespasser on the land of another"). See also Black's Law Dictionary 541 (9th ed. 2009). The writ was limited, however, by the fact that it could only be brought where the plaintiff was "held out." See *Mead* v. *Cutler, supra.* As a result, there were "cases where a party in possession of real estate would be obliged to abandon his accustomed possession and use, in order to [bring a writ of entry and] try the right of an adverse claimant." *Munroe* v. *Ward*, 4 Allen 150, 151 (1862). In recognition of the fact that such abandonment "would be unreasonable and contrary to sound policy," the try title statute was enacted so that property owners might remain in possession while requiring that adverse claims be either asserted or disavowed rather than lingering indefinitely. *Id.*

Under the early versions of the try title statute the sole jurisdictional requirement was "actual possession and taking of profits" from the land. *Id.* at 152. See St. 1873, c. 178; St. 1852, c. 312, § 52; St. 1851, c. 233, § 66. Pursuant to these statutes, record or legal title to the property was irrelevant. See *Orthodox Congregational Soc'y* v. *Greenwich*, 145 Mass. 112, 113 (1887) ("[M]ost of the facts . . . bear only upon the question of title. These we need not consider"); *Leary* v. *Duff*, 137 Mass. 147, 149-150 (1884) ("not of importance that the title asserted by the petitioner rests upon an alleged . . . adverse possession," rather than on legal title).

These early enactments were repealed in 1893, however, and the modern form of the statute was adopted. St. 1893, c. 340. One of the principal amendments was the addition of an opening clause, referring to "the record title of real property." St. 1893, c. 340, § 1. Contrast Pub. Sts. (1882), c. 176, §§ 1, 2. Almost immediately following the 1893 amendment, this court was required to consider the meaning of the new statutory language. In the case of *Arnold* v. *Reed*, 162 Mass. 438 (1894), a putative property owner filed a try title action alleging possession and relying on a recorded deed purporting to convey good title to the property. *Id.* at 439-440. The court held that mere possession was no longer sufficient and that, under the new statute, title appearing on "the record" was also necessary.[6] *Id.*

---

[6]Interestingly for purposes of this proceeding, in *Arnold* v. *Reed*, 162 Mass.

at 440. The court thus read the new introductory clause as limiting the types of disputes — i.e., only claims based on record title — that might be resolved in a try title action. See St. 1893, c. 340, § 1 ("When the record title of real property is clouded by an adverse claim"). The limitation added by the Legislature in 1893 remains operative in the present statute, and the jurisdictional requirement of "record title" is thus applicable to Bevilacqua's claim. Compare G. L. c. 240, § 1 ("If the record title of land is clouded by an adverse claim . . ."), with St. 1893, c. 340, § 1. We turn, then, to consider Bevilacqua's various claims to record title.

3. *Standing as owner of the property.*[7] Bevilacqua alleges that he has record title to the property because he is the owner by virtue of a quitclaim deed granted to him by U.S. Bank. There appear to be two theories that underpin this argument. First, the quitclaim deed may be sufficient by itself to support record title to the property. Second, if the quitclaim deed itself does not constitute record title, then that instrument coupled with the chain of grants on which it relies is sufficient as a whole to demonstrate record title. The first theory is incorrect as a matter of law. The second theory is unpersuasive in light of the facts alleged by Bevilacqua.

In addressing the first theory, that a single recorded deed purporting to transfer title is sufficient to establish record title, the Land Court judge made the trenchant observation that such a doctrine would render the "Brooklyn Bridge" problem insoluble. Specifically, the judge wrote that "in the classic example, a litigant could go to the registry, record a deed to the

---

438 (1894), the court was presented with a try title action where the plaintiff relied on a recorded deed reciting that the grantor possessed good title. *Id.* at 440. "[T]he recitals [were] not true [however], and this would appear by an examination of the records of the Probate Court." *Id.* Accordingly, the mere recording of an instrument with the registry of deeds that purports to transfer ownership was insufficient to create standing under the try title statute. *Id.* But see *Connolley, petitioner,* 168 Mass. 201, 203-204 (1897) (petitioner had sufficient record title where his grantor had only $255/264$th ownership according to registry records, $246/264$th ownership according to wills and registry records, and complete but unrecorded ownership due to adverse possession).

[7] We refer in Part 3 to Bevilacqua as the owner of the property, using the term "owner" in a colloquial sense, to distinguish this analysis from our later consideration of Bevilacqua's claim to hold record title as assignee of the mortgage or as a bona fide purchaser without notice.

Brooklyn Bridge, commence suit, hope that the true owners ignored the suit or . . . could not be readily located and [would thus] be defaulted, and secure a judgment." Leaving aside the fact that public property cannot be the subject of a try title action, see G. L. c. 240, § 5, an interpretation of the try title statute permitting such a result cannot be the law.

We are not persuaded by this "single deed" theory for a number of reasons, not least of which is the fact that there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. See *S & H Petroleum Corp.* v. *Register of Deeds for the County of Bristol*, 46 Mass. App. Ct. 535, 537 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function . . ."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G. L. c. 183, § 4 (leases and deed); G. L. c. 203, §§ 2-3 (trust documents). Recording is not sufficient in and of itself, however, to render an invalid document legally significant. See *Arnold* v. *Reed*, 162 Mass. 438, 440 (1894); *Nickerson* v. *Loud*, 115 Mass. 94, 97-98 (1874) ("mere assertions . . . whether recorded or unrecorded, do not constitute a cloud upon title, against which equity will grant relief"). As a result, it is the effectiveness of a document that is controlling rather than its mere existence. See *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003) (where grantor lacks title "a mutual intent to convey and receive title to the property is beside the point"). The effectiveness of the quitclaim deed to Bevilacqua thus turns, in part, on the validity of his grantor's title. Accordingly, a single deed considered without reference to its chain of title is insufficient to show "record title" as required by G. L. c. 240, § 1.

The second theory supporting Bevilacqua's ownership claim addresses this point by asserting that the chain of deeds recorded at the registry is sufficient to demonstrate record title. Under this theory Bevilacqua may trace his chain of title back from the quitclaim deed, through the foreclosure deed, and ultimately to the mortgage granted by Rodriguez to MERS as nominee for Finance America. Bevilacqua has alleged, however, that U.S. Bank was not the assignee of the mortgage at the time

that it purported to foreclose on the property and conduct a sale pursuant to the power of sale contained in the mortgage.[8]

As we recently held in the *Ibanez* case, Massachusetts "adhere[s] to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms,' " so where a foreclosure sale occurs in the absence of authority, "there is no valid execution of the power, and the sale is wholly void." *U.S. Bank Nat'l Ass'n* v. *Ibanez*, 458 Mass. 637, 646 (2011), quoting *Moore* v. *Dick*, 187 Mass. 207, 211 (1905). "One of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." *U.S. Bank Nat'l Ass'n* v. *Ibanez*, *supra* at 647. See *Bongaards* v. *Millen, supra.* By alleging that U.S. Bank was not the assignee of the mortgage at the time of the purported foreclosure, Bevilacqua is necessarily asserting that the power of sale was not complied with, that the purported sale was invalid, and that his grantor's title was defective. See *U.S. Bank Nat'l Ass'n* v. *Ibanez, supra.* In light of its defective title, the intention of U.S. Bank to transfer the property to Bevilacqua is irrelevant and he cannot have become the owner of the property pursuant to the quitclaim deed. See *Bongaards* v. *Millen, supra.* Bevilacqua's theory based on the chain of title is thus unpersuasive.

In this regard we note that Bevilacqua's try title action based on ownership of the property faces an insurmountable obstacle. A try title action may be brought only where record title is "clouded by an adverse claim, or by the possibility thereof." G. L. c. 240, § 1. However, the very fact that raises the possibility of an adverse claim — U.S. Bank's lack of authority to foreclose at the time it purported to foreclose — is fatal to Bevilacqua's claim to "own" the property. The basic problem is that, instead of presenting a potentially viable claim and seeking

---

[8]One amicus appended to its brief a copy of the foreclosure deed and the legal notice announcing the foreclosure sale. That foreclosure deed recites that "U.S. Bank National Association [U.S. Bank] as Trustee [is the] holder of a mortgage from Pablo Rodriguez," while the notice, recorded with the foreclosure deed, states that "[U.S. Bank as trustee] is the present holder" of the mortgage. Neither of these documents is in evidence, and whether he relied on such representations or not, Bevilacqua's petition directly contradicts the accuracy of the quoted statements. We rely on the facts pleaded in the petition for purposes of this appeal. See *supra* at 764.

to test it against the claims of a rival, Bevilacqua effectively admits that he does not presently have record title and seeks a declaration, if Rodriguez were to default, that the defect is cured. In light of the pleaded facts it is thus impossible for us to conclude that Bevilacqua's ownership theory demonstrates the jurisdictional facts necessary to maintain a try title action. See G. L. c. 240, § 1.

   4. *Standing as assignee of the mortgage.* As an alternative to the claim that he owns the property in fee simple, Bevilacqua argues that he holds record title because he is the assignee of the mortgage granted by Rodriguez to MERS as nominee for Finance America. Bevilacqua does not develop the argument at length but it is an intriguing one given that Massachusetts is a "title theory" State in which "a mortgage is a transfer of legal title in a property to secure a debt." *U.S. Bank Nat'l Ass'n* v. *Ibanez, supra* at 649. If a mortgagee's legal title suffices to establish "record title" under G. L. c. 240, § 1, then Bevilacqua may be able to demonstrate standing to proceed with this try title action. We conclude, however, that Bevilacqua's claim to record title as mortgagee is inconsistent with the relief he seeks, namely, that Rodriguez be compelled either to "show cause why he should not be required to bring an action to try title" or to "be forever barred from having or enforcing any claim in the property." Accordingly, we conclude that Bevilacqua's theory of record title as mortgagee is untenable and cannot support standing under G. L. c. 240, § 1.

   We begin our analysis of this question by noting that Bevilacqua's claim to be holder of the mortgage has at least a plausible basis despite the fact that he has never taken an express assignment. This court has held that it is possible for a foreclosure deed, ineffective due to noncompliance with the power of sale, to nevertheless operate as an assignment of the mortgage itself. See *Holmes* v. *Turner's Falls Co.*, 142 Mass. 590, 591 (1886); *Dearnaley* v. *Chase*, 136 Mass. 288, 290 (1884); *Brown* v. *Smith*, 116 Mass. 108 (1874). The theory is that "where a deed of real estate shows by its language that it was intended to pass title by one form of conveyance, by which however title could not pass, courts have made the deed effective by construing it as a deed of some other form, notwithstanding the inappropriateness of

the language." *Kaufman* v. *Federal Nat'l Bank*, 287 Mass. 97, 100-101 (1934). Bevilacqua argues in his brief that "the foreclosure deed constituted an assignment of the mortgage on the [p]roperty to Bevilacqua." As stated, this proposition cannot be correct because Bevilacqua was not a party to the foreclosure deed. Further, Bevilacqua has alleged that U.S. Bank was not the assignee of the mortgage at the time it executed the foreclosure deed so it is impossible for that instrument to be construed as an assignment of mortgage. See *U.S. Bank Nat'l Ass'n* v. *Ibanez, supra* at 654 ("Because an assignment of a mortgage is a transfer of legal title, it becomes effective . . . only on the transfer; it cannot become effective before the transfer"). We assume without deciding, however, that Bevilacqua might be able to establish a chain of assignments passing from his quitclaim deed, through the "Confirmatory Foreclosure Deed," through the recorded assignment from MERS, and thus ultimately back to Rodriguez's original deed of mortgage. See *supra* at 764 (regarding drawing of favorable inferences). We may thus assume, without deciding, that there is a factual basis on which Bevilacqua may claim to be the assignee of the mortgage.

The title that Bevilacqua might claim as mortgagee, however, would be inconsistent with the relief that might be provided under G. L. c. 240, §§ 1-5. The problem, from Bevilacqua's perspective, arises from the nature of a mortgage. In Massachusetts, a "mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains." *Maglione* v. *BancBoston Mtge. Corp.*, 29 Mass. App. Ct. 88, 90 (1990). The purpose of the split is "to give to the mortgagee an effectual security for the payment of a debt [while] leav[ing] to the mortgagor . . . the full control, disposition and ownership of the estate." *Santiago* v. *Alba Mgt., Inc.*, 77 Mass. App. Ct. 46, 49 (2010), quoting *Charlestown Five Cents Sav. Bank* v. *White*, 30 F. Supp. 416, 418-419 (D. Mass. 1939). The title held by a mortgagee is defeasible, and "upon payment of the note by the mortgagor . . . the mortgagee's interest in the real property comes to an end." *Maglione* v. *BancBoston Mtge. Corp., supra.*

Inherent in this concept of the mortgagee's defeasible title is the mortgagor's equity of redemption:

"[T]he mortgagor's equity of redemption [is] the basic and historic right of a debtor to redeem the mortgage obligation after its due date, and ultimately to insist on foreclosure as the means of terminating the mortgagor's interest in the mortgaged real estate."

Restatement (Third) of Property (Mortgages) c. 3, Introductory Note at 97 (1996) (addressing common law applicable in both title theory and lien theory States). "[A]n equity of redemption is inseparably connected with a mortgage," *Peugh* v. *Davis*, 96 U.S. 332, 337 (1877), and endures so long as the mortgage continues in existence:

"When the right of redemption is foreclosed, the mortgage has done its work and the property is no longer mortgaged land. Instead, the former mortgagee owns the legal and equitable interests in the property and the mortgage no longer exists."

*Santiago* v. *Alba Mgt., Inc., supra* at 50. See G. L. c. 244, § 18 (mortgagor holds equity of redemption until mortgagor forecloses); *Maglione* v. *BancBoston Mtge. Corp., supra* ("upon payment of the note by the mortgagor . . . the mortgagee's interest in the real property comes to an end"). Following default, therefore, a mortgagee may enter and possess the property but his or her title remains subject to the mortgagor's equity of redemption. See G. L. c. 244, §§ 1, 2; *Joyner* v. *Lenox Sav. Bank*, 322 Mass. 46, 52-53 & n.1 (1947); *Maglione* v. *Banc-Boston Mtge. Corp., supra* at 91 (this right of entry and possession distinguishes title and lien theory States). This state of affairs persists until either the mortgagee brings a proceeding to foreclose on the equity of redemption, see *Negron* v. *Gordon*, 373 Mass. 199, 205 n.4 (1977) (listing four methods of foreclosing equity of redemption), or until the mortgagor redeems the property and brings the mortgagee's interests in the property to an end. See *Maglione* v. *BancBoston Mtge. Corp., supra* at 90. See also G. L. c. 260, § 33 (limitations period for foreclosure proceedings). The crucial point is that a mortgage, by its nature, necessarily implies the simultaneous existence of two separate but complementary claims to the property that do not survive the mortgage or each other.

This point controls the present case because a litigant who asserts that he or she is the holder of a mortgage necessarily

asserts that the mortgage continues to exist and that the mortgagor's claims to the property remain valid. For this reason, a plaintiff in a try title action may be heard to claim that a mortgage no longer exists, that claims to the contrary are adverse, and that the putative mortgagee should be required to bring an action trying the claim. See, e.g., *Brewster* v. *Seeger*, 173 Mass. 281 (1899). For a plaintiff to both claim record title as holder of a mortgage and to dispute the respondent's continuing equitable title or equity of redemption would be oxymoronic, however, because the only circumstances in which the respondent's rights would not be upheld are circumstances in which there is no mortgage for the plaintiff to hold. This is the circumstance in which Bevilacqua finds himself.

To assert that he holds legal title as mortgagee, Bevilacqua must necessarily accept that Rodriguez has a complementary claim to either equitable title (if there has been no default) or an equity of redemption (if default has occurred). In either case, and although their economic interests may diverge, Bevilacqua cannot be heard to argue that Rodriguez's claim is adverse to his own. This fact necessarily precluded Bevilacqua from establishing a necessary element of his try title action — the existence of an adverse claim.[9] See G. L. c. 240, § 1 (action may be brought "[i]f the record title of land is clouded by an adverse claim . . ."). The legal title possessed by a mortgagee is not, therefore, a basis of standing that would be consistent with maintenance of Bevilacqua's action against Rodriguez. Accordingly, we conclude that it is not open to Bevilacqua to rely on such title in attempting to demonstrate the necessary jurisdictional facts.[10]

5. *Standing as bona fide purchaser for value.* In concluding

---

[9]In addition, it is difficult, if not impossible, to imagine what kind of action Rodriguez might bring to try his title as mortgagor. Presumably Rodriguez would assert that the purported foreclosure sale was ineffective, that no foreclosure has occurred, and that he thus retains an equity of redemption. Bevilacqua necessarily would agree with these claims, having asserted that he is the mortgage holder, so judgment could enter on the pleadings declaring that Rodriguez enjoys an equity of redemption. Such an action would be nonsensical.

[10]Bevilacqua asserts that foreclosure is not an adequate remedy in these circumstances because, he argues with emphasis, if he "is required to foreclose on the mortgage . . . to clean up his title, this will delay his sale or refinance

his arguments, Bevilacqua asserts that he "could not have known, when he purchased the [p]roperty, that this title problem existed" and that as a result he must be permitted to proceed under the try title statute or be left without an adequate remedy. Certain of the amici expand on this point, arguing that Bevilacqua is a bona fide purchaser for value and without notice such that he holds good title to the property. Under this theory, Bevilacqua's quitclaim deed transferred good title to the property that, in addition to his possession, satisfies the standing requirements of the try title statute.[11] G. L. c. 240, § 1. We need not address the legal merits of the argument because Bevilacqua is not a bona fide purchaser without notice of the defects in his grantor's title.

We begin analysis of this bona fide purchaser theory by noting that "[t]he law goes a great way in protecting the title of a purchaser for value without notice or knowledge of any defect in the power of the vendor to sell . . . ." *Rogers* v. *Barnes,* 169 Mass. 179, 183 (1897). For that reason, the purchaser's "title is not to be affected by mere irregularities in executing a power of sale contained in a mortgage, of which irregularities

for a *minimum* of about seven to nine months." Foreclosure, however, is the appropriate remedy for a mortgagee seeking to resolve an outstanding equity of redemption. See *Negron* v. *Gordon,* 373 Mass. 199, 205 n.4 (1977) (listing four methods of foreclosing equity of redemption). Nothing contained herein is intended to limit Bevilacqua's right, if he can show himself to be mortgagee of the property, to pursue foreclosure under the appropriate statutes. The record does not disclose if Bevilacqua presently holds the promissory note secured by Rodriguez's mortgage. Whether the holder of a mortgage may foreclose the equity of redemption without also holding the note is a question that is not before us.

[11]Bevilacqua's chain of title as a bona fide purchaser necessarily begins with his quitclaim deed from U.S. Bank. In some States, "[i]t is well settled . . . that one who has only a quitclaim deed to land cannot claim protection as a bona fide purchaser without notice." *Polhemus* v. *Cobb,* 653 So. 2d 964, 967-968 (Ala. 1995), quoting *Gordon* v. *Ward,* 221 Ala. 173, 174 (1930). "In this Commonwealth, [however,] such a deed is as effectual to transfer whatever title the grantor has in the premises, as a deed with full covenants of warranty. The conveyance in either form is voidable, and not void, if fraudulent as to creditors; and, until defeated by a creditor, the title of the grantor passes." *Mansfield* v. *Dyer,* 131 Mass. 200, 201 (1881). See *Boynton* v. *Haggart,* 120 F. 819, 822-823 (8th Cir. 1903) (history and evolution of decisions regarding quitclaim deeds, recording statutes, and bona fide purchasers). If a grantor has voidable title to a Massachusetts property, therefore, that title may pass through a quitclaim deed to a bona fide purchaser in whose hands the title is no longer voidable.

he has no knowledge, actual or constructive." *Id.* at 183-184. There are limits to the protections provided to bona fide purchasers, however, and "[t]he purchaser of an apparently perfect record title is not protected against all adverse claims." *Brewster* v. *Weston,* 235 Mass. 14, 17 (1920). Where the bona fide purchaser is not protected against an adverse claim the purchaser "must rely upon the covenants of his deed" rather than dispossession of the true owner — that is, there are situations in which it is the purchaser rather than the original owner who must seek recovery from a third person rather than being awarded possession of the property itself. *Id.* See 3 J. Palomar, Land Titles § 677, at 374-375 (3d ed. 2003) (listing circumstances in which actual facts may rebut presumption of record title and true owner will prevail over innocent purchaser).

Generally, the key question in this regard is whether the transaction is void, in which case it is a nullity such that title never left possession of the original owner, or merely voidable, in which case a bona fide purchaser may take good title. See *Brewster* v. *Weston, supra.* Cf. Restatement (Second) of Contracts § 7 comment a (1981). Here, the dispute as to title revolves around the validity of the unauthorized foreclosure sale conducted by U.S. Bank. Certain of the amici argue that the category in which such a transaction belongs, void or merely voidable, has not been addressed definitively in Massachusetts. Our recent decision in the case of *U.S. Bank Nat'l Ass'n* v. *Ibanez,* 458 Mass. 637, 647 (2011), however, concluded that "[a]ny effort to foreclose by a party lacking 'jurisdiction and authority' to carry out a foreclosure under [the relevant] statutes is void." We decline the invitation to revisit this issue. In any event, a factual prerequisite — purchase by Bevilacqua without notice of the defects in U.S. Bank's title — does not exist.

Bevilacqua's petition alleges that a number of documents were recorded with the registry and provides the book and page number applicable to each document, but fails to provide the dates on which recording occurred. We take judicial notice, however, of the fact that the registry assigns book and page numbers to recorded instruments in a sequential manner. See Mass. G. Evid. § 201(b) (2011). We therefore may conclude that instruments with lower book and page numbers were re-

corded prior to instruments with higher book and page numbers.[12] Here, the book and page numbers demonstrate recording of documents in the following order: (i) the mortgage from Rodriguez to MERS (executed on March 18, 2005); (ii) the assignment of mortgage from MERS to U.S. Bank (executed on July 21, 2006); (iii) the purported foreclosure deed from U.S. Bank "as Trustee" to U.S. Bank as trustee under the servicing agreement (executed on June 29, 2006); (iv) the "Confirmatory Foreclosure Deed" from U.S. Bank "as Trustee" to U.S. Bank as trustee under the servicing agreement (executed on October 9, 2006); and (v) the quitclaim deed from U.S. Bank to Bevilacqua (executed on October 17, 2006). We cannot be sure of the precise date on which the foreclosure deed became a matter of public record, but we do know that this occurred after the assignment of mortgage had been recorded. As a result, Bevilacqua must have attempted to purchase the property from U.S. Bank (in some capacity) either when the registry's records showed the bank to be a complete stranger to title, when the registry's records showed the bank to be no more than an assignee of the mortgage, or when the registry's records showed that the bank conducted the foreclosure sale before receiving assignment of the mortgage. In none of these circumstances could we conclude that Bevilacqua is a bona fide purchaser for value and without notice that U.S. Bank's title was doubtful. See *Demoulas* v. *Demoulas*, 428 Mass. 555, 577 (1998) (parties may not "establish themselves as bona fide purchasers simply by claiming that they were 'blissfully unaware' of" facts to which they closed their eyes). We therefore are unconvinced by Bevilacqua's claim to record title based on the theory that he is a bona fide purchaser for value and without notice.

6. *Dismissal with prejudice.* As a final matter we consider whether the Land Court judge properly specified that Bevilacqua's complaint be dismissed with prejudice. As discussed above, the precise procedural mechanism under which the judge decided the sua sponte motion to dismiss is unclear. What is

---

[12]A registry of deeds may employ several assistant registers who process documents. It is thus possible, although irrelevant for purposes of this decision, that documents presented to different assistant registers at nearly the same time may have book and page numbers that do not reflect the precise order of such overlapping presentations.

clear, however, is that the judge's dismissal was based on lack of standing and thus want of subject matter jurisdiction. See Mass. R. Civ. P. 12 (h) (3) ("Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"); *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court,* 448 Mass. 15, 21 (2006), and cases cited ("The issue of standing is one of subject matter jurisdiction").

A complaint that is dismissed for lack of jurisdiction is not an adjudication on the merits. See Mass. R. Civ. P. 41 (b) (3), as amended, 454 Mass. 1403 (2009) (involuntary dismissal or "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction . . . operates as an adjudication upon the merits"). It is thus inappropriate to attach preclusive effects to the dismissal beyond the matter actually decided — the absence of subject matter jurisdiction. See Restatement (Second) of Judgments § 11, at 108 (1982) ("A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action"). The obvious rationale for this rule is that a court without subject matter jurisdiction over a controversy is without authority to issue a binding judgment regarding that controversy. See *id.* at comment a. The conclusion that Bevilacqua lacks standing to bring a try title action is thus binding on him in future actions but dismissal of this action for want of subject matter jurisdiction does not bar him from bringing other actions regarding title to the property.

7. *Conclusion.* The Land Court judge properly raised the question whether Bevilacqua has record title to the property such that he has standing to bring a try title action. Bevilacqua has identified no basis on which it might be concluded that he has record title to the property such that a try title action may be sustained. As a result, the Land Court was without jurisdiction to hear the try title action. Dismissal of the petition was therefore proper. The dismissal should have been entered without prejudice, however, and we therefore remand to the Land Court for entry of judgment consistent with this opinion.

*So ordered.*