# United States Court of Appeals
## For the First Circuit

No. 13-2222

GUY GIUFFRE,

Plaintiff, Appellant,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY; HOMEWARD RESIDENTIAL, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Kayatta, Circuit Judges.

David G. Baker on brief for appellant.
Mark B. Johnson and Johnson & Borenstein, LLC on brief
for appellee Deutsche Bank National Trust Company.
Marissa I. Delinks, Maura K. McKelvey, and Hinshaw &
Culbertson LLP on brief for appellee Homeward Residential, Inc.

July 17, 2014

**KAYATTA, <u>Circuit Judge</u>**.  Plaintiff Guy Giuffre alleges that he fell victim to a fraudulent "foreclosure rescue" scheme in which he allowed an attorney to take title to his home and strip it of most or all of its equity by granting a new mortgage.  When the lawyer's scheme fell apart, Giuffre got his home back, but the mortgage remained in place.  Having made no payments on the loan secured by the mortgage, and facing foreclosure as a result, Giuffre filed this lawsuit in an effort to shift the burden of his plight to the mortgagee.  Finding no basis in Giuffre's pleadings to hold the bank responsible for the harm the attorney inflicted on him, the district court dismissed the lawsuit.  We affirm.

## I.  Background

We describe the facts as they are alleged in Giuffre's complaint, drawing all plausible inferences in his favor, and borrowing from the district court's able summary.[1]  <u>See</u> <u>Giuffre</u> v. <u>Deutsche Bank Nat. Trust Co.</u>, 2013 WL 4587301 (D. Mass. Aug. 27, 2013).  In 2006, struggling to pay the mortgage on his house in Massachusetts, Giuffre filed for bankruptcy.  On the advice of his attorney, however, he voluntarily dismissed his bankruptcy to pursue an alternative "foreclosure rescue" scheme.

Under the scheme, Giuffre sold his home to a different attorney, Alec Sohmer, for $625,000, as reflected in a recorded deed, and paid off his preexisting mortgage, on which he apparently

---

[1]  We also add some detail from public records and documents that the parties treat as incorporated into the complaint.  <u>See,</u> <u>e.g.</u>, <u>Maloy</u> v. <u>Ballori-Lage</u>, 744 F.3d 250, 251 n.1 (1st Cir. 2014).

owed slightly more than $400,000. Sohmer obtained a new mortgage on the property in the amount of $500,000 from Option One Mortgage Corporation (which later transferred the mortgage to Deutsche Bank). At the same time, Sohmer transferred the property for a nominal price to a trust of which he was the trustee and Giuffre was the main but not sole beneficiary. Giuffre's complaint is silent as to whether he ultimately received any funds from these transactions.

Sohmer had assured Giuffre that although Giuffre no longer owned the property he could reside there while paying rent to Sohmer, which would presumably go to the mortgage, and obtain a new mortgage in his own name after two years. This plan soon failed, because Sohmer demanded rent payments that Giuffre could not afford--and that exceeded the mortgage payments that drove Giuffre into bankruptcy. Sohmer eventually initiated eviction proceedings. Sohmer also failed to make payments on the new mortgage, and the bank sought to foreclose.

Soon after, Sohmer filed for bankruptcy, putting the foreclosure on hold. Meanwhile, reacting to Sohmer's mistreatment of Giuffre and other homeowners, the Massachusetts Attorney General pursued various legal remedies. Ultimately, the bankruptcy court approved a settlement that aimed to "restore [Sohmer's victims], to the extent possible, to the positions they occupied prior to the Foreclosure Avoidance Transactions." See In re Sohmer, No. 06-14073 (Bankr. D. Mass. 2006), Dkt. 716, at 3. In the settlement, several lenders to which Sohmer gave mortgages, including Option

-3-

One, agreed to make certain efforts to mitigate the harm arising from Sohmer's conduct.[2]

The trustee in Sohmer's bankruptcy eventually conveyed Sohmer's interest in the home to Giuffre. In 2012, Deutsche Bank sought relief from the automatic stay to pursue foreclosure proceedings, but the bankruptcy court held that because the property had been transferred out of the estate, the stay did not apply. Giuffre's pleadings contain no suggestion that Deutsche Bank has yet initiated a foreclosure.

Giuffre initiated this case in Massachusetts land court, seeking to have the mortgage declared void. Deutsche Bank removed it to federal court.[3] The district court eventually granted the defendants' motion to dismiss, holding that Giuffre had failed to state a claim that the mortgage was void. Three weeks later, Giuffre filed a motion captioned "Motion for Leave to File First Amended Complaint," attaching an amended complaint that added detail to his original complaint, lengthening it from thirty-eight paragraphs to sixty-five paragraphs. The court denied the motion, finding that it "lack[ed] the power to allow amendment of [the] complaint" because Giuffre had "not moved for post-judgment relief

---

[2] Giuffre does not argue that the settlement demonstrates any wrongdoing by Option One. In the bankruptcy proceedings, he opposed the settlement and chose not to opt in. He notes that he does not expect to recover any money from Sohmer, as "it does not appear likely that there will be any assets for distribution to creditors such as Giuffre."

[3] Defendant Homeward Residential adopts all of Deutsche Bank's arguments, and we make no distinction between the two defendants.

pursuant to Rule 59 or 60."  On the same day, Giuffre filed his notice of appeal, stating that he was appealing both the dismissal of his complaint and the denial of his motion to amend.

## II.  Appellate Jurisdiction

We begin by considering the defendants' challenge to our appellate jurisdiction.  The defendants note that Giuffre filed his notice of appeal thirty-four days after the district court dismissed his complaint.  A party seeking to appeal a district court decision ordinarily must file a notice of appeal within thirty days of the entry of the judgment or order being appealed, lest we lack jurisdiction over the appeal.  Fed. R. App. P. 4(a)(1)(A); Bowles v. Russell, 551 U.S. 205, 209 (2007).

But there are exceptions to the thirty-day limit.  As relevant here, when a party files a timely motion in the district court to alter or reconsider an earlier judgment, the party can then wait until the court decides that later motion (and up to thirty days afterwards) before appealing the original judgment. Fed. R. App. P. 4(a)(4)(A).

Our jurisdiction therefore turns on whether Giuffre filed a motion to alter or reconsider the district court's order dismissing his complaint.  Giuffre points to his motion for leave to amend, claiming that it also functioned in substance as a motion to alter or amend the court's dismissal order.  While the caption of the motion does not help Giuffre's cause ("Motion for Leave to File First Amended Complaint"), Giuffre asks us to focus on the the body of the motion, specifically the portion challenging the court's decision to dismiss the complaint.  The motion noted that

-5-

between briefing on the defendants' motion to dismiss and the court's order, the First Circuit released an important decision, Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir. 2013), which the district court relied on in dismissing the complaint. Because the district court cancelled oral argument on the motion to dismiss, Giuffre explained, he never had an opportunity to address Culhane, and he thought "the court's interpretation of Culhane [was] too narrow." Giuffre's motion also pointed out that the district court's dismissal order was silent as to whether an amendment was permitted. In seeking leave to amend his complaint, therefore, Giuffre's misdirected and misbegotten motion could be read, in part, as asking the court to alter its earlier order to allow amendment.

In responding to Giuffre's motion below, Deutsche Bank itself gave the motion just such a reading, volunteering that the motion was "an amalgamation of a motion to amend and a motion for reconsideration." The bank nevertheless argued, and maintains on appeal, that the motion should be treated as solely a motion to amend the complaint, not one qualifying as extending the time limit for filing a notice of appeal.

We disagree. In characterizing motions for these purposes, we focus on their substance, not their labeling. Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 283 (1st Cir. 1993). In substance, Giuffre's motion challenged the legal foundation of the dismissal order and called on the judge to either revoke that order or alter it to allow him leave to amend. These are "classic Rule 59 claim[s]," id., albeit ones presented in a

-6-

misleading manner.  Given that even Deutsche Bank nevertheless recognized the motion as serving in part as a request to alter the earlier judgment, and so informed the district court, we find the poorly presented request for relief to qualify, barely, as extending the time limit for filing a notice of appeal.  We therefore deem Giuffre's appeal of the dismissal order timely.

### III.  Analysis

We review the district court's decision to dismiss de novo and may affirm "on any basis available in the record." Lemelson v. U.S. Bank Nat. Ass'n, 721 F.3d 18, 21 (1st Cir. 2013).

Giuffre concedes that he transferred title to his property to Sohmer.  He also concedes that Sohmer granted a mortgage to Option One.  Under Massachusetts law, when Sohmer granted the mortgage, he transferred to Option One "legal title" while retaining "equitable title," the right to eventually reacquire legal title when the mortgage debt was paid in full. Bevilacqua v. Rodriguez, 460 Mass. 762, 774-75 (2011).  Giuffre later reacquired equitable title from the trustee in Sohmer's bankruptcy,[4] and Deutsche Bank acquired legal title from Option One.

In the words of Giuffre's brief on appeal, his complaint "sought a declaration from the land court voiding the mortgage as having been obtained by fraud, deceit and misrepresentation."  Yet, in the complaint's actual allegations, and in his brief on appeal, Giuffre does not allege that the grant of the mortgage by Sohmer to

---

[4] Giuffre cites this transfer as giving him ownership of the property, but the bankruptcy trustee could not convey legal title to the property because Sohmer's estate did not have it.

-7-

Option One was itself marred by any fraud, much less fraud that would void the transaction. Instead, he attacks only the dealings between himself and Sohmer, claiming that Sohmer fraudulently induced him to transfer the property to Sohmer. Giuffre cites no authority supporting the notion that a mortgage can be declared void simply because it was granted by someone who previously acquired the property through this kind of fraud. Such a rule would have sweeping implications, opening any mortgage to question based on conduct unknowable to the mortgagee. Unsurprisingly, Massachusetts does not allow claims based on fraudulent inducement against a subsequent purchaser for value, except if the plaintiff establishes that the purchaser had notice of the fraud. See Somes v. Brewer, 19 Mass. 184, 195 (1824) ("[W]here a grantee obtained a deed of land by fraud . . . and afterwards conveyed the land to a bona fide purchaser for a valuable consideration without notice of the fraud, . . . such purchaser had a valid title against the first grantor."); Bevilacqua, 460 Mass. at 777 n.11 (2011) (same); Altman v. Stiegel, 349 Mass. 768, 768 (1965) (applying the same principle to a mortgagee). A later transferee has notice for these purposes if it "has actual knowledge," "received a notice," or "has reason to know" based on "the facts and circumstances known to him at the time." Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 547 (1997).

Giuffre's complaint did not allege that Option One knew of Sohmer's fraud or had any reason to deduce that it had occurred. Consequently, a factfinder accepting Giuffre's allegations as true would conclude that Option One received legal title to Giuffre's

home without notice of fraud, and that Deutsche Bank now validly holds it, allowing the bank to foreclose if the terms of repayment in the mortgage are not satisfied.

Seeking to bypass this fundamental obstacle to his claim, Giuffre asserts that the mortgage cannot be enforced because the debt to Deutsche Bank is "nonexistent," because Giuffre "does not owe Deutsche Bank any money," and because he "never signed and never agreed to grant." These claims misunderstand and misconstrue the situation. The debt certainly exists: Option One lent $500,000 to Sohmer, and Giuffre concedes that this debt was not discharged in Sohmer's bankruptcy. Because Sohmer granted a mortgage, Option One (and later Deutsche Bank) acquired legal title to the property, regardless of Giuffre's lack of consent. And in practical terms Giuffre must indeed make loan payments if he hopes to retain the property: Giuffre's interest in the property as a holder of equitable title constitutes a right to "reacquire legal title by paying the debt which the mortgage secures." Lemelson, 721 F.3d at 24 (internal quotation marks omitted).

Finally, Giuffre says that "[e]quity should intervene and restore title to Giuffre," noting that "[i]t is hard to see that Deutsche Bank would be harmed [as it] surely has recourse to title insurance." While we are certainly sympathetic to Giuffre's apparent mistreatment at the hands of his prior lawyer, his complaint provides no legal basis for making Deutsche Bank (or its insurer) pay for the lawyer's wrongdoing.

**IV.  Giuffre's Motion to Amend his Complaint**

-9-

Giuffre's proposed amendments to his complaint do not repair the fundamental problems described above with his attempt to hold Deutsche Bank responsible for Sohmer's wrongdoing. We therefore affirm the district court's denial of Giuffre's motion to amend. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (holding that a motion to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted.").

Giuffre's amended complaint does gesture towards a claim that Option One knew or should have known of Sohmer's fraud, but it ultimately falls far short of supporting such a claim. Stripping away several purely conclusory allegations, Giuffre's amended complaint alleges only that Option One should have known that Giuffre "was the individual who would be paying the mortgage" because Giuffre was a beneficiary of the trust holding the property, and that the bank nevertheless "conducted no due diligence to determine whether Giuffre could afford the mortgage." But the relevant fraud here is not that Giuffre had too little financial capacity. Rather, the underlying fraud as alleged by Giuffre is that Sohmer was lying and self-dealing. Giuffre's allegations offer no hint as to how Option One should have discovered that fraud, even if Giuffre were correct (which we doubt) that Option One owed a duty to the beneficiaries of a trust to which the bank's borrower intended to transfer the property.

Giuffre's amended complaint also includes two entirely new counts raising issues unrelated to Sohmer's fraud, one questioning whether Deutsche Bank holds the promissory note and the

other related to the securitization of the mortgage.  Giuffre has never claimed that he was unaware of the facts giving rise to these new claims when he first filed the suit eighteen months before the proposed amendment.  We are confident that the district court would have properly rejected Giuffre's last-ditch attempt to mutate the case to avoid dismissal, pressed after more than a year and a half of litigation.  In short, this is a classic case of "undue delay." See Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390-91 (1st Cir. 2013).  In any event, Giuffre fails to adequately plead facts supporting his new claims, and so they are also futile.

## V. Conclusion

For the foregoing reasons, we affirm the dismissal of Giuffre's complaint and the denial of his motion for leave to amend his complaint.  Double costs are awarded to the appellees.

So ordered.