The Bank of New York Mellon Corp. *v.* Wain.

THE BANK OF NEW YORK MELLON CORP., trustee,[1] *vs.* DAVID WAIN & another.[2]

No. 13-P-101.

Suffolk. November 1, 2013. - June 24, 2014.

Present: KAFKER, MILKEY, & HINES, JJ.

*Mortgage,* Assignment, Foreclosure. *Notice,* Foreclosure of mortgage. *Real Property,* Mortgage. *Practice, Civil,* Summary judgment, Standing. *Assignment. Land Court,* Jurisdiction. *Jurisdiction,* Land Court.

In a civil action to quiet title following the foreclosure by the plaintiff bank of the defendant homeowners' property, a Land Court judge properly granted summary judgment in favor of the bank on the homeowners' counterclaims challenging the validity of the foreclosure, where, although the judge erred in concluding that the notice to cure letter sent by the bank fully complied with G. L. c. 244, § 35A, none of the noncompliance in the notice identified by the homeowners individually or collectively rendered the foreclosure so fundamentally unfair that they would be entitled to affirmative equitable relief setting aside the foreclosure sale [500-502]; and where the homeowners lacked standing to challenge the validity of the assignment of the mortgage by the original mortgagee to the bank, in that the assignment comported with the requirements of the governing statute, G. L. c. 183, § 54B, and was therefore effective to pass legal title such that it could not be shown to be void [502-504].

In a civil action quiet title following the foreclosure by the plaintiff bank of the defendant homeowners' property, a Land Court judge properly granted summary judgment in favor of the bank on the homeowners' counterclaim to compel the bank to try title pursuant to G. L. c. 240, §§ 1-5, where there was no dispute on the record before the court that the bank held superior title as a matter of law and therefore would prevail in the second phase of any try title litigation. [504-506]

CIVIL ACTION commenced in the Land Court Department on February 6, 2012.

The case was heard by *Alexander H. Sands, III*, J., on motions for summary judgment.

---

[1] Of the TBW Mortgage-Backed Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1.

[2] Donovan Kerr.

*Jamie Ranney* for the defendants.

*David W. Merritt* for the plaintiff.

MILKEY, J. David Wain and Donovan Kerr (collectively, the homeowners) owned property in Nantucket that was subject to a mortgage. The Bank of New York Mellon Corp. (bank) acquired that mortgage through an assignment from the original mortgagee. After the homeowners defaulted, the bank foreclosed and purchased the property at the foreclosure sale. The bank then filed an action to quiet title, and the homeowners filed counterclaims seeking to challenge the validity of the foreclosure on various grounds.[3] In a detailed and thoughtful decision, a Land Court judge ruled in the bank's favor on summary judgment.[4] We affirm, albeit on different grounds.

*Background.* Except as otherwise noted, the facts are undisputed. At a closing for the property held on November 15, 2006, the homeowners executed a note and mortgage for $707,000.[5] The mortgage was recorded at the local registry of deeds the following day. The original mortgagee was Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for the Union Capital Mortgage Business Trust.

After the homeowners apparently were unable to keep up with their payments, a mortgage servicing entity known as American Home Mortgage Servicing, Inc. (American Home), sent the homeowners a "notice to cure letter" dated April 5,

[3]The counterclaims were framed in two counts, one as a try title action pursuant to G. L. c. 240, §§ 1-5, and the other seeking what in effect would have been a declaratory judgment that the foreclosure was invalid.

[4]As a preliminary matter, the judge ruled that the bank's own quiet title action was not properly before him, because the bank had not registered to do business in the Commonwealth and therefore lacked standing to maintain an action. Although the judge recognized that Federal law itself gives national banks the right to sue and be sued, see 12 U.S.C. § 24 (2012), he held that the bank could not rely on that provision because, strictly speaking, it was "a bank holding company rather than a national bank." The judge nevertheless determined that he could reach the underlying merits regarding the validity of the foreclosure, because these were raised independently by the homeowners' counterclaims. Neither side has challenged either portion of that two-part ruling.

[5]It is not clear on this record whether the closing was for an original purchase or a refinancing. For present purposes, the distinction is immaterial.

2010. See G. L. c. 244, § 35A.[6] That letter informed the home-owners that they were in default, explained how the default could be cured, and stated that if they failed to cure by July 4, 2010, a foreclosure would follow. The letter stated that American Home was acting on behalf of "Tbw Mortgage-backed Trust 2007-1," identified as "the Mortgagee of the Note and Deed of Trust associated with your real estate loan."

On or about July 14, 2010, a vice-president of MERS executed a formal assignment of its mortgage to the bank "as Trustee for TBW Mortgage-Backed Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1." This was done before a notary public. The assignment was eventually recorded on August 9, 2010.

Meanwhile, on July 30, 2010, in order to pursue foreclosure, the bank filed a complaint pursuant to the Servicemembers Civil Relief Act. 50 U.S.C. app. §§ 501 et seq. (2006). That same day, the bank also filed a mortgagee's affidavit with the Land Court (see G. L. c. 244, § 11, inserted by St. 2007, c. 206, § 11), together with a copy of the April 5, 2010, notice to cure letter. Relying on the statutory power of sale referenced in the mortgage, the bank held a foreclosure sale on July 19, 2011, and itself purchased the property at the sale.[7] On December 21, 2011, the bank recorded a foreclosure deed, together with an af-fidavit of sale. See G. L. c. 244, § 15.

*Discussion.* 1. *The notice to cure letter.* The homeowners argue that the foreclosure is invalid because the notice to cure letter did not fully comply with the dictates of G. L. c. 244, § 35A. For example, they point out that the notice to cure letter listed "Tbw Mortgage-backed Trust 2007-1" as the mortgagee when it is undisputed that MERS was the mortgagee of record when the letter was sent. We agree with the homeowners that the judge erred to the extent he concluded that the notice to cure letter fully complied with § 35A. However, his rejection of the homeowners' § 35A arguments was correct for a different reason.

---

[6]The version of G. L. c. 244, § 35A, inserted by St. 2007, c. 206, § 11, is applicable. Section 35A was amended in 2010, see St. 2010, c. 258, § 7, but those amendments were not effective until August 7 of that year.

[7]Before the sale, the bank provided notice to the homeowners and had a notice published in the local paper. The adequacy of that notice is not in dispute.

As the Supreme Judicial Court recently held, where the notice to cure letter sent to a mortgagor does not fully comply with G. L. c. 244, § 35A, the mortgagor has the right to bring an equitable action in Superior Court to enjoin the threatened foreclosure. *U.S. Bank Natl. Assn.* v. *Schumacher*, 467 Mass. 421, 429 (2014) (*Schumacher*). Moreover, as the court also resolved, a mortgagor may, in certain circumstances, raise noncompliance with § 35A as grounds to challenge the validity of a foreclosure after the fact, e.g., through a counterclaim to a summary process action. *Id.* at 422 n.4, 429 n.12. However, in a postforeclosure action, it is not enough for the mortgagor merely to show some noncompliance with § 35A. Instead, the mortgagor "must prove that the violation of § 35A rendered the foreclosure so fundamentally unfair that she is entitled to affirmative equitable relief, specifically the setting aside of the foreclosure sale 'for reasons other than failure to comply strictly with the power of sale provided in the mortgage.' " *Schumacher*, 467 Mass. at 433 (Gants, J., concurring), quoting from *Bank of America, N.A.* v. *Rosa*, 466 Mass. 613, 624 (2013).[8]

The homeowners here did not bring an equitable action in Superior Court to enjoin the foreclosure sale based on a deficient notice to cure letter. Instead, they raised noncompliance with G. L. c. 244, § 35A, only as a defense in the current postforeclosure action.[9] Assuming, without deciding, that the § 35A issues were properly before the Land Court,[10] none of the non-

---

[8]The majority opinion in *Schumacher* stated that the concurring opinion "accurately reflects the practical consequences of our decision today in conjunction with our decision in *Bank of Am., N.A.* v. *Rosa, supra.*" *Schumacher, supra* at 429 n.12. Thus, the passage from the concurring opinion quoted in the text reflects the unanimous view of the court. The homeowners have made no convincing argument why the "fundamentally unfair" standard would apply when § 35A violations were raised as a defense to a summary process action, but not apply in other postforeclosure contexts.

[9]The bank's claim that the homeowners raised the § 35A issues for the first time on appeal is factually inaccurate. Their counterclaims specifically referenced violations of § 35A as one reason why the foreclosure should be invalidated, and they also briefed the issue in the Land Court.

[10]We assume arguendo that a mortgagor could raise noncompliance with § 35A as a defense in a postforeclosure action to quiet title (an issue not squarely resolved by *Schumacher*). The bank has made no convincing argument why a mortgagor could raise § 35A violations as a defense to a summary process action, but not as a defense to an action to quiet title.

compliance identified by the homeowners, individually or collectively, "rendered the foreclosure so fundamentally unfair that [they would be] entitled to affirmative equitable relief" setting aside the foreclosure sale. *Schumacher, supra.* Indeed, the homeowners concede that they received notice that they were in default and about how that default could be cured. They cannot point to any noncompliance with the statutory notice to cure provisions that prejudiced them in any material way. Thus, the judge was correct to reject the homeowners' § 35A arguments.

2. *Validity of the assignment.* On various theories, the homeowners seek to challenge the validity of the assignment of the mortgage from MERS to the bank. The motion judge ruled that the homeowners lacked any standing to contest this assignment.[11] We begin by addressing that question.

In *Sullivan* v. *Kondaur Capital Corp., ante* 202, 206 (2014) (*Kondaur Capital*), we held that a mortgagor has standing to claim that a "purported foreclosure was void by reason of [the mortgagee's] lack of legal authority to conduct it." At the same time, however, we emphasized that a mortgagor's standing was limited to claims that a defect in the assignment rendered it void, not merely voidable. *Id.* at 206 n.7. As we explained, "[a] deficiency in an assignment that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or its successors in interest." *Ibid.* That conclusion is also consistent with that reached by the United States Court of Appeals for the First Circuit applying both Federal and State standing law. *Culhane* v. *Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013) (homeowner has standing to challenge mortgage assignment as "invalid, ineffective, or void," but lacks standing to argue that assignment is "merely voidable at the election of one party but otherwise effective to pass legal title"). Thus, where the foreclosing entity has established that it validly holds the mortgage, a mortgagor in default has no legally cognizable stake in whether there otherwise might be latent defects in the assignment process.

---

[11]In a footnote, the judge stated his view that the assignment was valid even if the homeowners had standing.

In the Land Court, the bank took the position that the home-owners lacked any standing to challenge the validity of the assignment from MERS to the bank (the position adopted by the motion judge). The bank significantly narrowed its standing argument on appeal, even though its briefing predated our decision in *Kondaur Capital*. It now argues that the homeowners are unable, as a matter of law, to demonstrate that the assignment from MERS was void, and that the homeowners cannot otherwise seek to challenge the validity of the assignment process. Under the circumstances of this case, we agree.

It is undisputed that MERS was the record holder of the mortgage at the time the mortgage was assigned to the bank. It is also undisputed that the formal assignment here recited that the person signing on behalf of MERS was a vice-president of that company, and that the assignment included an attestation that the signatory personally appeared and executed the document before a notary public. This satisfied the dictates of G. L. c. 183, § 54B, the statute that governs the assignment of mortgages. Thus, the assignment at issue here is materially different from the one at issue in *Kondaur Capital*, which was invalid because it failed to meet the "relaxed requirements" of G. L. c. 183, § 54B. *Kondaur Capital, supra* at 212 (certificate of assignment failed to document authority of one of signatories in accordance with terms of statute). With the assignment here comporting with the requirements of the governing statute, it was "otherwise effective to pass legal title" and cannot be shown to be void.

The homeowners seek to defeat summary judgment by maintaining that there is a dispute of material fact as to the validity of the assignment. At oral argument, they argued that even though the assignment on its face satisfies the applicable statutory requirements, the MERS vice-president who signed on behalf of MERS may not in fact have had the authority to do so, and they further suggested that the assignment was in fact not done in person before a notary public (but instead used an automated signature process known as "robo-signing"). Putting aside the homeowners' failure to brief these issues and their failure to document such claims as part of the summary judgment record,[12] these claims fail for a more fundamental reason.

---

[12]At oral argument, the homeowners asked us to take judicial notice of the

Because the record title holder of the mortgage satisfied the dictates of the statute governing the assignment of mortgages, the homeowners have no basis for arguing that the assignment is void. Regardless of whether any hidden problems they seek to raise might provide a basis for a third party to claim that the assignment was potentially voidable, the homeowners themselves have no right to raise such issues.[13]

3. *Try title action.* As noted, one of the counterclaims the homeowners sought to bring was an action pursuant to G. L. c. 240, §§ 1-5, to compel the bank to "try title." See *Bevilacqua* v. *Rodriguez*, 460 Mass. 762, 766-770 (2011) (reviewing history of try title statute and explaining how try title action differs from quiet title action). As the discussion in *Bevilacqua* reveals, a try title action is a creature of ancient provenance

record in a different case, namely, the above-referenced Servicemembers litigation, and they submitted excerpts of that record postargument. They claim that materials the bank submitted there inferentially establish that the vice-president who signed the assignment for MERS may not in fact have been among those authorized to do so. Although it is true that an appellate court "may take judicial notice of the court papers filed in related cases," *Schumacher*, 467 Mass. at 425 n.8, citing *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983), this principle does not relieve a party opposing summary judgment from putting the relevant factual materials before the judge deciding the motion. See *Cannonball Fund, Ltd.* v. *Duchess Capital Mgmt.*, 84 Mass. App. Ct. 75, 91 (2013). To the extent that the homeowners argue that the judge should not have entertained summary judgment without allowing a fuller record to be developed through discovery, they waived that argument by failing to file a certificate pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), explaining what discovery was necessary before summary judgment proceeded. See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 401 (2003).

[13]The homeowners additionally argued that the summary judgment record raises a question whether MERS — by the date of the assignment — already had assigned the mortgage to someone else (and therefore had nothing to transfer to the bank). They specifically point to the fact that the notice to cure letter (which predated the assignment) identifies an entity other than MERS and the bank as the holder of the mortgage (the same awkwardly-titled trust on whose behalf the bank, as trustee, subsequently formally obtained the assignment). Passing over the fact that the homeowners failed to preserve that argument below, the homeowners' argument is inconsistent with our decision in *Kondaur Capital*, 85 Mass. App. Ct. at 209-210, where we rejected a similar argument. As we noted there, the key consideration is whether the assignor of the mortgage held the record legal interest in the mortgage at the time of the assignment; it is immaterial that another entity might hold an unrecorded equitable or beneficial interest in the mortgage.

through which someone in possession of property can seek to establish that his or her rights to the property are superior to those of other named parties. *Ibid.* Parties initiating try title actions must show two "jurisdictional facts": that they in fact are in possession of the disputed property, and that they hold a "record title" to it. *Id.* at 767. If they demonstrate these facts, they can secure an order requiring the other named parties with a potentially adverse claim to come forward to prove their claim or otherwise be barred. *Id.* at 766. Thus, a possessor who prevails on its initial try title petition wins only a preliminary victory, with the onus then on the respondents to disclaim their interest or to bring an action establishing their claim.[14]

As the briefing in this case reveals, trial court judges have taken divergent views on whether a mortgagor can use a try title action as an appropriate vehicle to challenge the validity of a foreclosure.[15] That issue is now before the Supreme Judicial Court in a case that has not yet been scheduled for oral argument. See Abate *vs.* Freemont Investment & Loan, SJC No. 11638.[16] In the case before us, the judge avoided stating a position on the threshold question whether a try title action would lie here.

---

[14]In the apt words of one Land Court judge, it requires anyone asserting an adverse right to "put up or shut up." See *Varian* v. *Bank of N.Y. Mellon*, 21 Land Ct. Rep. 490, 493 n.6 (Land Ct. No. 12-MISC-462971 August 23, 2013).

[15]Given that the mortgagor's interest is, by definition, subject to that of the mortgagee, some judges have reasoned that there is no title dispute between the two parties necessary to support a try title action. This can be stated as follows: because the granting of the mortgage is viewed as passing title to the mortgagee, then in a contest between the two, the mortgagor cannot demonstrate that it holds "record title" necessary to support a try title action. That principle has been applied even in the face of a challenge to whether the foreclosing entity in fact stands in the shoes of the original mortgagee. In the words of the United States Court of Appeals for the First Circuit, interpreting Massachusetts law, "[u]ncertainty as to who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of equitable title." *Lemelson* v. *U.S. Bank Natl. Assn.*, 721 F.3d 18, 24 n.7 (1st Cir. 2013). At least one Land Court judge has come to the opposite conclusion. See *Varian*, 21 Land Ct. Rep. at 490.

[16]We requested supplemental briefing to address, inter alia, whether we should stay further action in the current case pending a ruling in the Abate case. In light of the fact that that case has not yet been scheduled for argument, and may not be outcome determinative in this matter, we have decided to proceed with addressing the case before us.

Instead, he went to the underlying merits of whether the bank had a superior claim to title under the undisputed facts. The homeowners argue that this was procedurally improper. According to them, they established the jurisdictional facts necessary to prevail on their try title petition, and therefore they are entitled on summary judgment to an order commanding the bank to establish its claim of title in a separate proceeding.

Without reaching the question whether a mortgagor can use a try title action as a vehicle for contesting the validity of a foreclosure, we discern no error in the approach that the judge took here. As noted, on the summary judgment record that was developed, there is no dispute of material fact regarding which party holds superior title.[17] Having established its superior title as a matter of law, the bank demonstrated that it would prevail in the second phase of any try title litigation. Other than mere delay, nothing would be served by going through such additional process. Assuming, arguendo, that the homeowners properly invoked the try title statute, under the facts of this case, we see no impediment to the judge's wrapping up the underlying merits in the bank's favor in one unitary proceeding.

*Judgment affirmed.*

---

[17]Whether a try title action lies may have implications for which party carries the burden of proof regarding the validity of the foreclosure. However, where, as here, the material facts are uncontested, which party ultimately carries the burden of proof does not matter.