SHEEDY vs. GOSHEN MORTGAGE LLC, AS SEPARATE TRUSTEE OF GDBT [sic] TRUST 2011-1, MISC 19-000199

































 
 THOMAS E. SHEEDY, TRUSTEE OF LIBERTY TRUST, Plaintiff, v. GOSHEN MORTGAGE LLC, AS SEPARATE TRUSTEE OF GDBT [sic] TRUST 2011-1, AND DONALD C. KUPPERSTEIN, Defendants
 MISC 19-000199 
 APRIL 6, 2021
SUFFOLK, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ALLOWING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT














 INTRODUCTION 





 Plaintiff Thomas E. Sheedy, as Trustee of Liberty Trust ("Mr. Sheedy"), commenced this action to quiet title to property located at 10 Carmen Street, Boston, Massachusetts ("the Property") with the filing of a verified complaint ("the Complaint") against Goshen Mortgage LLC, As Separate Trustee For GDBT I Trust 2011-1 ("Goshen") on April 26, 2019. [Note 1] The case presents competing claims to the Property, by Mr. Sheedy arising out of his 2016 foreclosure of a second mortgage on the Property held by him, and by Goshen arising out of its 2018 foreclosure of a first mortgage on the Property allegedly held by it. After the conclusion of discovery, Goshen filed Defendant, Goshen Mortgage, LLC, As Separate Trustee Of GDBT I Trust 2011- 1's, Motion For Summary Judgment ("the Motion") and supporting documents, Mr. Sheedy filed his opposition thereto with supporting documents in which he sought the entry of summary judgment in his favor in accordance with Mass. R. Civ. P. 56 (c), and Goshen filed a reply and supplemental affidavit. A hearing on the Motion was held by videoconference on March 17, 2021. For the reasons set forth below, the Motion is ALLOWED. 





UNDISPUTED FACTS 





 The following undisputed facts are either established in the record and pertinent to the motion for summary judgment and the opposition thereto or are facts contained in records of the Suffolk Registry of Deeds ("the Registry") of which the court takes judicial notice pursuant to Mass. G. Evid. § 201. [Note 2] With the exception of the date on which Goshen made entry on the Property for the purpose of foreclosing on the 2005 Mortgage (as defined below), the information regarding which was provided later and not disputed, and the quoted contents of the 2005 Mortgage, the facts in the form substantially as set forth below were reviewed with counsel and agreed to be undisputed at the hearing on this matter. 





 1. The Property was acquired by Allen C. Brown a/k/a Allan Brown ("Mr. Brown") pursuant to a deed dated March 29, 1995 from Mortgage Properties Corp. to Mr. Brown recorded in the Registry at Book 19673, Page 110. 





 2. On September 22, 2005, Mr. Brown executed a promissory note ("the 2005 Note") in the amount of $302,900.00 payable to the order of Fremont Investment & Loan. Affidavit Of Attorney Philip L. Eiker, sworn to on November 18, 2020 ("2020 Eiker Aff.") Ex. B. 





 3. On the same date, Mr. Brown granted a mortgage on the Property to Fremont Investment & Loan to secure the 2005 Note ("the 2005 Mortgage"), which mortgage is recorded in the Registry at Book 38121, Page 216. 





 4. The 2005 Mortgage defines "MERS" as "Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." 





 5. The 2005 Mortgage defines "Lender" as "Fremont Investment & Loan." 





 6. The 2005 Mortgage defines "Applicable Law" as "all controlling applicable federal, state and local statutes, regulations, ordinances or administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." 





 7. The 2005 Mortgage also contains the following provision: 





 16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. 





 8. The 2005 Note was negotiated by Freemont Investment & Loan by undated indorsement to GMAC Mortgage LLC fka GMAC Mortgage Corporation ("GMAC"); by GMAC by undated indorsement to Copperfield Investments, LLC ("Copperfield"); by David Pauker in his capacity as Plan Administrator of the Third Amended Plan of Liquidation for Copperfield Investments, LLC dated January 6, 2009 ("the Copperfield Administrator") by indorsement dated November 29, 2009 to Private Capital Group, LLC ("Private Capital"); by Private Capital by undated indorsement to Roundpoint Mortgage Servicing Corporation ("Roundpoint"); and by Roundpoint by undated indorsement in blank. 





 9. According to counsel for Goshen, the 2005 Note and all its indorsements are in his personal possession. 2020 Eiker Aff. ¶ 3. 





 10. According to counsel for Goshen, his office or predecessor counsel have been in physical possession of the 2005 Note and its indorsements during the entire foreclosure process. Affidavit Of Philip L. Eiker In Support Of Goshen Mortgage, LLC As Separate Trustee Of GDBT I Trust 2011-1's Reply To Plaintiff's Opposition To Defendant's Motion For Summary Judgment And Cross-Motion For Summary Judgment, sworn to on January 29, 2021 ("2021 Eiker Aff.") ¶ 4. 





 11. The 2005 Mortgage was assigned by MERS to GMAC by Assignment Of Mortgage dated March 12, 2007 but not recorded in the Registry until August 20, 2008 at Book 43947, Page 212 ("2007 MERS to GMAC Assignment").





 12. The 2005 Mortgage was the subject of a second Assignment Of Mortgage by MERS to GMAC dated April 22, 2008 and recorded in the Registry on April 24, 2008 at Book 43435, Page 68 ("2008 MERS to GMAC Assignment"). 





 13. Mr. Sheedy disputes the validity of the 2007 MERS to GMAC Assignment and the 2008 MERS to GMAC Assignment. 





 14. An Assignment Of Mortgage from GMAC to Copperfield dated March 13, 2006 ("GMAC to Copperfield Assignment"), one year before the date of the 2007 MERS to GMAC Assignment, was recorded in the Registry at Book 43947, Page 215, immediately after the recording of the 2007 MERS to GMAC Assignment. 





 15. The GMAC to Copperfield Assignment is of all GMAC's "right, title and interest" to the 2005 Mortgage. 





 16. GMAC was not formed until April 13, 2006. Affidavit Of Glenn F. Russell, Jr. In Support Of Plaintiff's Opposition To Defendant's Motion For Summary Judgment, sworn to on December 28, 2020 ("Russell Aff.") at PRA-0020. 





 17. On October 26, 2006, a citation issued from this court in an action brought pursuant to the Servicemembers Civil Relief Act by GMAC seeking authority to foreclose the 2005 Mortgage, which citation was recorded in the Registry at Book 40708, Page 269. 





 18. In 2009, the 2005 Mortgage was purportedly assigned by Assignment Of Mortgage from the Copperfield Administrator to Private Capital dated November 25, 2009 and recorded in the Registry at Book 46073, Page 246 ("Copperfield to Private Capital Assignment"), an assignment that is also of "all the mortgagee's rights, title and interest, if any" in the 2005 Mortgage. 





 19. The 2005 Mortgage was then purportedly assigned by Assignment Of Mortgage from Private Capital to Roundpoint dated December 14, 2011 and recorded in the Registry at Book 48934, Page 119 ("Private Capital to Roundpoint Assignment"). 





 20. The 2005 Mortgage was then purportedly assigned by Assignment Of Mortgage from Roundpoint to Goshen dated November 23, 2011 and recorded in the Registry at Book 55648, Page 297 ("the Roundpoint to Goshen Assignment"). 





 21. Mr. Sheedy disputes the validity of the GMAC to Copperfield Assignment, the Copperfield to Private Capital Assignment, the Private Capital to Roundpoint Assignment and the Roundpoint to Goshen Assignment. 





 22. Meanwhile, on May 3, 2006, Mr. Brown executed a mortgage of the Property in favor of Mr. Sheedy ("the Sheedy Mortgage"), which was recorded in the Registry at Book 39528, Page 77, to secure the payment of a promissory note of even date in the amount of $43,894.00. 





 23. Mr. Sheedy foreclosed on the Sheedy Mortgage in 2016, as evidenced by a Foreclosure Deed from Mr. Sheedy to himself recorded in the Registry at Book 56745, Page 331, and an Affidavit Of Sale executed by Mr. Sheedy on September 1, 2016 and recorded at Book 56745, Page 333 ("Sheedy Affidavit Of Sale"), both recorded on September 9, 2016. 





 24. According to the Sheedy Affidavit Of Sale, the auctioneer stated that the sale would be subject to the purported claim of a mortgagee of record, and the name and telephone number of that mortgagee's counsel was given to all potential bidders. 





 25. On September 27, 2016, Mr. Sheedy granted a mortgage on the Property to Mr. Kupperstein to secure the payment of $250,000.00, which mortgage was recorded in the Registry at Book 56888, Page 316 ("the Kupperstein Mortgage"). 





 26. On May 3, 2017, Goshen commenced an action against Mr. Sheedy, Mr. Kupperstein and Mr. Brown in the Superior Court Department of the Trial Court, Suffolk County, Docket No. 17-1359C ("the Superior Court Action") by way of a complaint entitled "Complaint To Foreclose Rights Of Redemption Under Loan Security Agreement." Russell Aff. at PRA-0005. 





 27. In that action, Goshen sought a declaration that the 2005 Mortgage encumbered the Property, that the 2005 Mortgage had priority over the Kupperstein Mortgage and that Mr. Sheedy was not entitled to the protection of the Servicemembers Civil Relief Act, and further sought "to judicially foreclose" the 2005 Mortgage. Id. 





 28. The Superior Court Action was voluntarily dismissed by Goshen shortly after it was filed. 





 29. On November 13, 2017, Goshen commenced an action in this court, Docket No. 17 MISC 000651 (MDV), naming GMAC as the sole defendant and requesting that the 2005 Mortgage, held of record by GMAC (the GMAC to Copperfield Assignment, executed on a date when GMAC did not exist and predating the assignment from MERS to GMAC, being invalid), be equitably assigned to Goshen ("the Land Court Action"). Russell Aff. at PRA-0018 to PRA-0023. 





 30. On April 2, 2018, this court issued a default judgment in the Land Court Action, GMAC having failed to answer or otherwise plead (it ceased operations in December 2013 as part of a Chapter 11 bankruptcy filed in May 2012), in which it was ordered, adjudged and decreed that GMAC was deemed to have assigned the 2005 Mortgage to Goshen ("the Default Judgment"). Russell Aff. at PRA-0229 to PRA-0230. 





 31. On November 1, 2018, Fay Servicing, LLC ("Fay Servicing") as attorney in fact for Goshen executed an Affidavit Regarding Note Secured By Mortgage Being Foreclosed certifying that the requirements of G. L. c. 244, § 35B had been complied with and that Goshen was the holder of the 2005 Note, which affidavit was recorded in the Registry at Book 60451, Page 16 ("the 35B Affidavit"), although Mr. Sheedy disputes that Goshen was the holder of the 2005 Mortgage as of that date. 





 32. On December 21, 2018, Goshen conducted a foreclosure sale. 





 33. On January 17, 2019, Goshen executed a foreclosure deed conveying the Property to itself, which foreclosure deed was recorded in the Registry at Book 60682, Page 276 ("the Goshen Foreclosure Deed"). 





 34. Also on January 17, 2019, a representative of Fay Servicing executed an affidavit in the statutory form prescribed by G. L. c. 183, § 8, which affidavit was recorded in the Registry at Book 60682, Page 278 ("the Goshen c. 183, § 8 Affidavit"). 





 35. Also on January 17, 2019, a representative of Fay Servicing executed a Post Foreclosure Affidavit Regarding Note attesting that as of the date when notices of sale were mailed and published pursuant to G. L. c. 244, § 14, and up until the time of the foreclosure sale date, the foreclosing mortgagee was authorized by the holder of the promissory note secured by the 2005 Mortgage to do so, which affidavit was recorded in the Registry at Book 60682, Page 282 ("the Goshen c. 244, § 15 Affidavit"). 





 36. On January 18, 2019, counsel for Goshen executed an Affidavit Under M.G.L. c. 183, Section 5B describing the notices sent by him pursuant to the terms of the 2005 Mortgage, which affidavit was recorded in the Registry at Book 60682, Page 281. 





STANDARD OF REVIEW 





 Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). "Summary judgment, when appropriate, may be rendered against the moving party." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002)." Palitz v. Zoning Board of Appeals of Tisbury, 470 Mass. 795 , 799 (2015). 





DISCUSSION 





 In support of its Motion, Goshen argues that it met all of the requirements to validly foreclose the 2005 Mortgage: (1) the recorded Goshen Foreclosure Deed and Goshen c. 183, § 8 Affidavit are prima facie evidence of Goshen's right to possession, Fannie Mae v. Hendricks, 463 Mass. 635 , 642 (2012) ("a foreclosure deed and statutory form constitute prima facie evidence of the right of possession"); (2) Goshen was the holder of the 2005 Mortgage at the time of the foreclosure notices and sale, see United States Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637 (2011); and (3) Goshen was the holder of the 2005 Note, see Eaton v. Fannie Mae, 462 Mass. 569 (2012). Implicit in Goshen's argument is the proposition that the foreclosure of its senior 2005 Mortgage extinguished Mr. Sheedy's interest obtained through the foreclosure of his junior Sheedy Mortgage. See Murphy v. Wachovia Bank of Delaware, N.A., 88 Mass. App. Ct. 9 , 15 (2015) ("If the senior mortgagee is the foreclosing party, it will be paid first; and, if a junior mortgagee is the foreclosing party, the senior mortgage will remain attached to the property. If the buyer at a foreclosure sale fails to pay off the remaining debt on the senior mortgage, the senior mortgagee may foreclose.") (citation omitted). As a result, unless one or more of Mr. Sheedy's arguments contesting the validity of Goshen's foreclosure prevail, Goshen's title to the Property is superior to Mr. Sheedy's title and Mr. Sheedy's quiet title claim therefore fails. [Note 3] 





 In opposition to the Motion, Mr. Sheedy contends both that Goshen was not the holder of the 2005 Note, based on the proposition that Goshen has failed to produce admissible evidence of that fact, and that it was not the holder of the 2005 Mortgage at the requisite time, as a result of which Goshen's foreclosure failed. [Note 4] Considering first Mr. Sheedy's challenge to Goshen's status as holder of the 2005 Note, the court agrees with Mr. Sheedy that the 35B Affidavit, stating that Goshen then held the 2005 Note, is not admissible evidence of that fact in the absence of a foundation as to the affiant's personal knowledge. The 35B Affidavit does not fall within G. L. c. 244, § 35B (f) ("affidavit certifying compliance with this section shall be conclusive evidence in favor of an arm's-length third party purchaser for value, at or subsequent to the resulting foreclosure sale"). However, the court does not agree with Mr. Sheedy that, if an affidavit refers to documents, "those documents must be certified, sworn and attached to the Affidavit," citing Mass. R. Civ. P. 56 (e). Plaintiff's Memorandum Of Opposition To Defendants' Motion For Summary Judgment ("Opposition") at p. 6. That rule provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith" (emphasis added). Mass. R. Civ. P. 56 (e). The 2020 Eiker Aff. satisfied that requirement with respect to the documents attached to it. Additionally, the court does not entirely agree with Mr. Sheedy's contention that Goshen must provide an explanation as to why it has not offered the original of a document before a copy from the Registry can be admitted. While that is certainly required for admissibility as an exception to the hearsay rule where the present owner claims an interest in the property and offers a registry record, Mass. G. Evid. § 803 (14), this court routinely takes judicial notice of registry records without requiring an explanation as to the whereabouts of the original and has done so here. See, e.g., Panella v. Bolio, 29 LCR 43 , 43 n. 1 (2021), 2021 Mass. LCR LEXIS 12, *1 n. 1 (Roberts, J.); Handy v. Estate of Dubois, 26 LCR 308 , 311 n. 6 (2018) (Cutler, C.J.); Schiavone v. Kiah, 24 LCR 798 , 801 n. 1 (2016) (Foster, J.); Am Props., LLC v. J&W Summit Ave, LLC, 23 LCR 404 , 405 nn. 4, 6, 406 nn. 7, 9-11 (2015) (Sands, J.). 





 Goshen's counsel's affidavits to the effect that he and predecessor counsel personally held the 2005 Note at all times material to the foreclosure process is admissible evidence of that fact. [Note 5] In light of that evidence, Mr. Sheedy was required to come forward with admissible evidence to the contrary. See Mass. R. Civ. P. 56 (e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). He has not done so, and so his argument with respect to Goshen's status as holder of the 2005 Note fails. 





 Mr. Sheedy has more arrows in his quiver with respect to his challenge to Goshen's status as holder of the 2005 Mortgage. Mr. Sheedy argues that the 2007 MERS to GMAC Assignment and the 2008 MERS to GMAC Assignment are invalid because MERS was not a "mortgagee" as defined by the Supreme Judicial Court in Eaton and because MERS could not undertake the affirmative act of assigning the 2005 Mortgage under the teaching of Eaton. Mr. Sheedy further argues that, even if MERS was authorized to make assignments, the particular assignments to GMAC here are deficient. Mr. Sheedy next argues that he is not bound by the Default Judgment in which the 2005 Mortgage was equitably assigned from GMAC to Goshen, not having been a party to that litigation. Mr. Sheedy finally argues that Goshen's prima facie case can be rebutted, and has been rebutted here. Each of these arguments is addressed in turn. 





 Because Eaton is central to Mr. Sheedy's argument regarding MERS's authority to assign the 2005 Mortgage, a review of that decision is in order. In Eaton, a homeowner challenged the validity of a foreclosure sale of her home during the course of a summary process action to evict her, contending that the foreclosure sale was void because the foreclosing party held only the mortgage, and not the note it secured, at the time of the foreclosure. The Supreme Judicial Court held that "[a] foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular G. L. c. 183, § 21 and G. L. c. 244, § 14." 462 Mass. at 571. More particularly, the court defined "mortgagee" as used in those statutes "to refer to the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." Id. 





 In reaching its conclusions, the Eaton court first considered the common law of real estate mortgages. "A real estate mortgage in Massachusetts has two distinct but related aspects: it is a transfer of legal title to the mortgage property, and it serves as security for an underlying note or other obligationthat is, the transfer of title is made in order to secure a debt, and the title itself is defeasible when the debt is paid." 462 Mass. at 575 (citations omitted). "However, in contrast to some jurisdictions, in Massachusetts the mere transfer of a mortgage note does not carry with it the mortgage." 462 Mass. at 576 (citation omitted). "[W]here a mortgage and note are separated, 'the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment.'" 462 Mass. at 576-577 (citations omitted). This trust, according to the Eaton court, "is not an express trust that vests specific, independent authority in the trustee to foreclose on the trust property or to take other affirmative acts." 462 Mass. at 577 n. 10. As a result of these principles, the Eaton court concluded that, "at common law, a mortgagee possessing only the mortgage was without authority to foreclose on his own behalf the mortgagor's equity of redemption or otherwise disturb the possessory interest of the mortgagor." 462 Mass. at 578 (citations omitted). 





 Mr. Sheedy first argues that, because MERS held only the 2005 Mortgage and not the 2005 Note at the time of the 2007 MERS to GMAC Assignment and the 2008 MERS to GMAC Assignment, it was not a "mortgagee" as defined by Eaton and, presumably, therefore not able to assign the 2005 Mortgage. Eaton, though, defined the term "mortgagee" as used in G. L. c. 183, § 31 (Statutory Forms  Statutory Power of Sale in Mortgage) and G. L. c. 244, § 14 (Procedure in Foreclosure Under Power of Sale; Form and Publication of Notice) governing foreclosure sales. It has limited, if any, bearing outside of that context. In contrast, by its express terms, the 2005 Mortgage plainly contemplates that it can be assigned. In the section describing the transfer of property rights, the 2005 Mortgage states that "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property." Russell Aff. at PRA-0127 (emphasis added). MERS's capacity to execute a valid assignment in these circumstanceswhere it held the 2005 Mortgage but not the 2005 Notehas previously been recognized. See Strawbridge v. Bank of N.Y. Mellon, 91 Mass. App. Ct. 827 , 831 n. 8 (2017) ("any lack of precision about the use of 'nominee' does not call into question MERS's capacity to assign a mortgage as to which it is the named mortgagee"), citing Haskins v. Deutsche Bank Nat'l Trust Co., 86 Mass. App. Ct. 632 , 642 (2014) ("There is likewise no merit to the plaintiff's claim that MERS is without capacity to execute a valid assignment of the mortgage (because it held a bare legal title to the mortgage, separated from any beneficial interest)." And, contrary to Mr. Sheedy's argument, nothing in Thompson v. JPMorgan Chase Bank, N.A., 486 Mass. 286 (2020), leads to a different result. 





 In Thompson, in a certified question from the United States Court of Appeals for the First Circuit, the Supreme Judicial Court was asked to determine whether a foreclosure was rendered invalid by the foreclosing mortgagee's sending the homeowners the form of notice required by G. L. c. 244, § 35A, informing the homeowners of their right to avoid foreclosure by paying the past due amount before a foreclosure sale takes place, when the terms of the homeowners' mortgage provided that they could reinstate their mortgage by paying the past due amount five days before the foreclosure sale. [Note 6] The Thompson court concluded that "the more generous reinstatement period provided under G. L. c. 244, § 35A, governs over the contractually imposed time limits on reinstatement articulated in" the homeowners' mortgage. 486 Mass. at 293. It reached that conclusion based on language in the mortgage, identical to that in the 2005 Mortgage here, stating that "[i]f any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument." Id.; Russell Aff. at PRA-0045. "[T]he longer time for reinstatement specified by G. L. c. 244, § 35Aany time prior to the foreclosure saleconstitutes controlling and applicable law that supersedes the conflicting provision of the mortgage contract." 486 Mass. at 288. 





 Mr. Sheedy argues, based on Thompson, that Eaton constitutes applicable law. While that may be, it does not change the conclusion, set forth above, that Eaton is not relevant here: that MERS does not meet Eaton's definition of "mortgagee" for purposes of conducting a foreclosure sale does not mean that it did not have authority to assign the 2005 Mortgage some ten years prior to Goshen's foreclosure. 





 Mr. Sheedy next argues that MERS could not assign the 2005 Mortgage because, under Eaton, MERS held the 2005 Mortgage in trust without "specific, independent authority in the trustee to foreclose on the trust property or to take other affirmative acts." 462 Mass. at 577 n. 10. According to Mr. Sheedy, the assignment of the 2005 Mortgage is the kind of affirmative act precluded by Eaton. Eaton, as noted above, was concerned with the validity of a foreclosure sale by a mortgage holder that did not also hold the underlying note, not with the authority of a mortgage holder to assign a mortgage prior to foreclosure proceedings. Moreover, multiple courts have concluded that MERS has authority to assign the mortgages that it holds. In addition to Strawbridge and Haskins, cited above, see also Dyer v. Wells Fargo Bank, N.A., 956 F.3d 62, 66 (1st Cir. 2020) ("But we held in Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir. 2013), that a mortgage that names 'MERS ... as nominee for [Lender] and [Lender's] successors and assigns' does suffice to make MERS the mortgage holder and thus authorizes MERS to assign the mortgage on behalf of the lender to the lender's successors and assigns. Id. at 293."); Hayden v. HSBC Bank USA, N.A., 956 F.3d. 69, 71 (1st Cir. 2020) ("a mortgage contract can validly make MERS the mortgagee and authorize it to assign the mortgage on behalf of the lender to the lender's successors and assigns"). Accordingly, this argument fails.





 Next, Mr. Sheedy contends that, even if MERS had authority to assign the 2005 Mortgage, the 2007 MERS to GMAC Assignment and the 2008 MERS to GMAC Assignment failed to do so. There is no explanation in the record as to why MERS executed two assignments to GMAC, one dated March 12, 2007 but not recorded until August 20, 2008 and the other dated April 22, 2008 and recorded on April 24, 2008. Contrary to Mr. Sheedy's argument regarding the 2008 MERS to GMAC Assignment being "confirmatory," there is nothing in the document that supports the conclusion that the 2008 MERS to GMAC Assignment was confirmatory of an earlier assignment. On its face, it purports to be an original assignment of the 2005 Mortgage, as does the 2007 MERS to GMAC Assignment. And, on their face, both assignments comply with G. L. c. 183, § 54B, [Note 7] the 2007 MERS to GMAC Assignment being executed by a vice president of MERS and the 2008 MERS to GMAC Assignment being executed by an assistant secretary and vice president and both documents being notarized. In a similar circumstance, the Appeals Court in Wells Fargo Bank, N.A. v. Anderson, 89 Mass. App. Ct. 369 , 372-373 (2016) found the assignments to have validly assigned the underlying mortgage: 





 [I]f the [first] assignment failed for any reason, [the assignor] would still have owned the residential mortgage at issue. This [second] assignment was therefore confirmatory in nature. If the [first] assignment had been successful, the [second] assignment was superfluous and harmless. Either way [the assignee] had been properly assigned the mortgage. 





The Wells Fargo court further found that the mortgagor did not have standing to challenge the validity of the assignment: 





 The bank maintains, and we agree, that either the [first] assignment or the [second] assignment transferred the mortgage to the entity that ultimately foreclosed, the bank. "[W]here the foreclosing entity has established that it validly holds the mortgage, a mortgagor in default has no legally cognizable stake in whether there otherwise might be latent defects in the assignment process." Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498 , 502, 11 N.E.3d 633 (2014). 





Id. at 372. The same result obtains here. 





 Mr. Sheedy next argues that he should have been named as a party to the Land Court Action and that the Default Judgment issued in that action is not binding on him. This court agrees that the Default Judgment is not binding on Mr. Sheedy. See DeGiacomo v. Quincy, 476 Mass. 38 , 44 (2016), citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n. 7, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard"). That being said, it is not at all clear that Mr. Sheedy would have had standing to participate in such a proceeding and, in any event, Mr. Sheedy has not articulated any theory under which a result different from that reflected in the Default Judgment could be reached: GMAC was the holder of the 2005 Mortgage by virtue of one or the other of the 2007 MERS to GMAC Assignment or the 2008 MERS to GMAC Assignment; the earlier GMAC to Copperfield Assignment was a nullity, GMAC not then holding the 2005 Mortgage, see Kitras v. Town of Aquinnah, 64 Mass. App. Ct. 285 , 292 (2005) ("one may not grant what one does not own"); and GMAC, as the holder of the 2005 Mortgage, was required to assign that mortgage to Goshen, as holder of the 2005 Note. See Ibanez, 458 Mass. at 652 ("the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment.") (citation omitted). 





 Finally, Mr. Sheedy argues that Goshen's prima facie case showing its right to possession - introduction of an attested copy of the Goshen Foreclosure Deed and the Goshen c. 244, § 15 Affidavit, see Hendricks, 463 Mass. at 637 - can be challenged, and has been challenged here. In particular, Mr. Sheedy "vehemently disputes the accuracy of the contents of the pre-auction and post auction Affidavits relied upon by [Goshen]" based on his contention that Goshen was required to produce "all original certified records relied upon by its various 'Affiant's'.[sic] or explicate its specific basis for not producing the same forthwith." Opposition at p. 34. This court does not agree with Mr. Sheedy's description of Goshen's evidentiary burden. See discussion, supra. Moreover, discovery now having been completed, the burden was on Mr. Sheedy to come forward with evidence controverting any statements in the affidavits with which he disagrees. See Hendricks, 463 Mass. at 642 ("If a plaintiff makes a prima facie case, it is then incumbent on a defendant to counter with his own affidavit or acceptable alternative demonstrating at least the existence of a genuine issue of material fact to avoid summary judgment against him."); Mass. G. Evid. § 301(c) ("If [the opposing] party fails to come forward with evidence to rebut or meet the prima facie evidence, the fact at issue is to be taken by the fact finder as established."); Mass. R. Civ. P. 56 (e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). He did not do so. As a result, Goshen's prima facie case stands unrebutted.





CONCLUSION 





 Goshen having proved its superior title to the Property, as set forth above, Mr. Sheedy's action to quiet title pursuant to G. L. c. 240, §§ 6-10, fails. Accordingly, judgment will enter dismissing the Complaint with prejudice. 





 SO ORDERED 







FOOTNOTES
[Note 1] Count I asserted a claim to quiet title pursuant to G. L. c. 240, §§ 6-10, against Goshen and Count II asserted a similar claim against defendant Donald C. Kupperstein ("Mr. Kupperstein"). Mr. Kupperstein was dismissed on September 30, 2020, Mr. Sheedy's motion to do so being unopposed. 

[Note 2] To the extent that Plaintiff's Concise Statement Of Material Facts, submitted in response to Goshen's statement of facts set forth in numbered paragraphs 1 through 12 of its Memorandum Of Law In Support Of Defendant, Goshen Mortgage, LLC As Separate Trustee Of GDBT I Trust 2011-1's Motion For Summary Judgement, does not comply with Rule 4, see Rules Of The Land Court (2005) ("Any response other than 'admitted' to a statement of fact made by the moving party, and any statement of additional material fact, must include page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits, or else the facts described by the moving party as undisputed shall be deemed to have been admitted"), Goshen's facts are deemed admitted. 

[Note 3] In a quiet title action, "plaintiff has the burden of establishing its title and not simply by demonstrating the weaknesses or nonexistence of the defendants' title. The plaintiff's burden requires the plaintiff not merely to demonstrate better title to the locus than the defendants possess, but requires the plaintiff to prove sufficient title to succeed in its action." Sheriff's Meadow Found., Inc. v. Bay-Courte Edgartown, Inc¸ 401 Mass. 267 , 269 (1987). See Ibanez, 458 Mass. at 645. 

[Note 4] At the hearing on the motion, the court confirmed with plaintiff's counsel that his arguments against the Motion were as follows: (1) that Goshen's evidence failed; (2) that MERS, not holding both the 2005 Note and the 2005 Mortgage at the time of the 2007 MERS to GMAC Assignment or the 2008 MERS to GMAC Assignment, could not assign it under the teaching of Eaton; (3) that even if MERS could assign the 2005 Mortgage, the two assignments to GMAC were deficient; (4) that Goshen did not hold the 2005 Note from the first advertisement of the foreclosure through the foreclosure sale; (5) that Mr. Sheedy was not bound by the judgment in the Land Court Action; and (6) that Goshen's prima facie case is rebuttable. 

[Note 5] Had Goshen's answers to interrogatories been signed, as they should have been, under the penalties of perjury, see Mass. R. Civ. P. 33 (a) (3), they would have provided additional evidence as to when Goshen acquired the 2005 Note. The Answers To Plaintiff's First Set Of Interrogatories By Defendant Goshen Mortgage LLC, As Separate Trustee For GDBT I Trust 2011-1, executed by a Goshen Vice President on November 25, 2019 and offered by Mr. Sheedy, state that Goshen acquired the mortgage loan at issue here in a bulk mortgage loan acquisition from Roundpoint on February 17, 2015 and that Goshen acquired ownership by possession of the 2005 Note on that date. Russell Aff. PRA-0232 to PRA-0242. Not having been properly executed, those interrogatory answers are disregarded. 

[Note 6] More particularly, the Supreme Judicial Court was asked whether a notice that complied with the statute, but not the terms of the mortgage, rendered the notice inaccurate or deceptive in a manner that rendered the subsequent foreclosure sale void under Massachusetts law. 486 Mass. at 287-288. 

[Note 7] That statute provides in pertinent part: 



 Notwithstanding any law to the contrary, . . . (2) a release, partial release or assignment of mortgage; ... if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity, acting in its own capacity or as a general partner or co-venturer of the entity holding such mortgage, shall be binding upon such entity and shall be entitled to be recorded, and no vote of the entity affirming such authority shall be required to permit recording.

 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.